1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10   CHARLOTTE C. WATSON, an          CASE NO. 16cv513-GPC(MDD)
     individual, and CHARLOTTE C.
11   WATSON, as Trustee of the          **ORDER GRANTING IN PART AND**
     CHARLOTTE WATSON TRUST          **DENYING IN PART DEFENDANTS**
12   dated November 5, 2003,          **BANA, U.S. BANK AND**
                                      **CALIBER'S MOTIONS TO**
13                    Plaintiffs,     **DISMISS**

14       v.

15                                    [Dkt. Nos. 10, 12.]

16   BANK OF AMERICA, N.A., a
     business entity form unknown;
17   CALIBER HOME LOANS, INC, a
     business entity form unknown; MTC
18   FINANCIAL, INC. a business entity
     form unknown; and U.S. BANK
19   TRUST, N.A., AS TRUSTEE FOR
     LSF9 MASTER PARTICIPATION
20   TRUST, a business entity form
     unknown; U.S. BANK NATIONAL
21   ASSOCIATION, AS INDENTURE
     TRUSTEE OF THE GMACM HOME
22   EQUITY LOAN TRUST 2006-HE4, a
     business entity form unknown; and
23   DOES 1-100, inclusive,

24                    Defendants.

25       Before the Court are Defendants Bank of America, N.A. ("BANA"), and U.S.

26   Bank National Association, as Indenture Trustee of the GMACM Home Equity Loan

27   Trust 2006-HE4's ("U.S. Bank") motion to dismiss the first amended complaint, (Dkt.

28   No. 10), and Defendant Caliber Home Loans, Inc.'s ("Caliber") motion to dismiss the

first amended complaint.  (Dkt. No. 12.).  Oppositions were filed on May 13, 2016. (Dkt. Nos. 15, 16.)  Replies were filed on May 27, 2016.  (Dkt. Nos. 18, 19.)  The matter was taken under submission on June 17, 2016.  (Dkt. No. 21.)  Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendants' motions to dismiss.

**Background**

On February 29, 2016, the case was removed to this Court from the San Diego Superior Court. (Dkt. No. 1.) A first amended complaint was filed on March 21, 2016. (Dkt. No. 8, FAC.)  Plaintiffs allege causes of action for violations of Regulation X under Real Estates Settlement Procedures Act ("RESPA") and Regulation Z under Truth in Lending Act ("TILA") as to Defendants BANA and Caliber; negligence; violation of California Business & Professions Code section 17200; quiet title; cancellation of instrument; declaratory relief; and slander of title as to all Defendants.[1] (Id.)  Plaintiffs allege that all defendants are "servicers", "master servicers" and/or "sub-servicers."  (Id. ¶ 16.)

The FAC alleges that around May 24, 2005, Plaintiffs Charlotte Watson[2] and Charlotte Watson, as Trustee of the Charlotte Watson Trust, ("Plaintiffs") obtained a first lien mortgage loan in the amount of $500,000 (the "Loan") from GMAC Mortgage Corporation, ("GMAC") secured by the real property ("Property") located at 3207 S. Bonita Street, Spring Valley, CA 91977 through a Deed of Trust, ("DOT 1") recorded on June 1, 2005 with the San Diego County Recorder's Office. (Dkt. No. 8, FAC ¶ 41.) Plaintiffs also executed Deed of Trust and Assignment of Rents relating to a Home Equity Line of Credit line of credit of up to $94,000.00 (the "HELOC"), from GMAC,

---

[1] Defendants MTC Financial, Inc. and U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust have been served, (Dkt. No. 1 at 46), but have not yet answered.

[2] Caliber argues that the Court should dismiss Charlotte Watson because she is not a signatory on the Deed of Trust and Note and cites to documents attached to its Request for Judicial Notice.  Since the Court denies Caliber's Request for Judicial Notice, the Court denies Caliber's motion to dismiss Charlotte Watson at this time.

secured by the same Property through a Deed of Trust ("DOT 2"), recorded on June 1, 2005.  (Id. ¶ 42.)  On or about February 16, 2012, an Assignment ("Assignment 1") of DOT 1 was recorded with the San Diego County Recorder's Office, purporting to assign the beneficial interest under DOT 1 to BANA.  (Id. ¶ 44.)  On or about February 12, 2014, a Substitution of Trustee was recorded with the San Diego County Recorder's Office, purporting to substitute MTC Financial, Inc. as the Trustee of DOT 1.  This substitution was purportedly executed by BANA.  However, on February 12, 2014, BANA did not have any authority under DOT 1 to substitute MTC Financial, Inc. ("MTC") as trustee of DOT 1. As such, the document is void and lacks any legal effect. (Id. ¶ 43.)

On or about February 14, 2014, Defendant MTC recorded a Notice of Default ("NOD") against the Property followed by two subsequent recordation of Notices of Trustee Sales ("NTS") on May 29, 2014 and September 16, 2014, respectively. According to the FAC, the attempted substitution of MTC as trustee of DOT 1 was done without any authority; thus the NOD and NTS(s) are void.  (Id. ¶ 45.)

On or about June 17, 2015, another Assignment ("Assignment 2") of DOT 1 was recorded in the San Diego County Recorder's Office, purporting to assign the beneficial interest under DOT 1 from BANA to U.S. Bank Trust, as Trustee for the LSF9 Trust.  Assignment 2 was purportedly executed by Caliber as BANA's attorney in fact; however, there is no relationship between Caliber with either BANA or LSF9. Plaintiffs believe Assignment 2 is void.  (Id. ¶ 46.)  On or about July 24, 2014, an Assignment ("Assignment 3") of DOT 2 was recorded with the San Diego County Recorder's Office, purporting to assign the beneficial interest under DOT 2 from Mortgage Electronic Registration Systems, Inc. ("MERS") to U.S. BANK as Trustee of GMACM HLOC Trust. MERS is a stranger to DOT 2.  (Id. ¶ 47.)  Plaintiffs assert that the loan secured by DOT 2 was removed from the GMACM HLOC Trust in 2011, following a Chapter 11 bankruptcy filing in the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 and pursuant to an Asset Purchase

1   Agreement where Lone Star U.S. Acquisitions, LLC, purchased, as a part of a
2   transaction, certain assets which were secured by DOT 2. This directly contradicts the
3   purported assignment by MERS to GMACM HLOC.   Plaintiffs believe that
4   Assignment 3 is void.  (Id. ¶ 48.)

5       In 2010, Plaintiffs suffered a financial hardship and sought foreclosure assistance
6   but BANA repeatedly denied Plaintiffs' requests while concurrently attempting to
7   foreclose on the Property.  (Id. ¶ 49.)  In late 2012, Plaintiffs sent a Qualified Written
8   Request, ("QWR") pursuant to 12 U.S.C. § 2605 (e) of the Real Estate Settlement
9   Procedures Act ("RESPA"), and a Notice of Right to Cancel  pursuant to 15 U.S.C. §
10  1601, of the Truth in Lending Act ("TILA") but BANA failed to acknowledge them or
11  respond.  (Id. ¶¶ 51, 53.)  Around July 2014, Plaintiffs again attempted to obtain a loan
12  modification from BANA but the request was summarily denied in August 2014.  (Id.
13  ¶ 54.)

14      On or about October 7, 2014, Plaintiffs again sought a loan modification
15  providing BANA notice along with supporting documentation of Plaintiffs' material
16  change in financial circumstance.  In response, BANA canceled the Trustee sale of the
17  Property and within two (2) weeks offered Plaintiffs a trial modification which
18  Plaintiffs accepted by tendering the required monthly payments. In consideration for
19  performance under the terms of the Trial Payment Plan and tendering three (3)
20  consecutive monthly payments of $2,591.22, BANA would offer Plaintiffs a permanent
21  loan modification.  (Id. ¶ 55.)  Prior to offering Plaintiffs a fair and affordable
22  Permanent Modification, which included the fees and charges which artificially inflated
23  the Principal Balance of the loan.

24      On May 16, 2015, the servicing of the loan was transferred to Caliber and allege
25  they were deprived of receiving the Permanent Modification they were qualified and
26  entitled to receive.  Plaintiffs also allege that any offer of a permanent modification by
27  BANA is void, because the principal balance of Plaintiffs' loan was artificially inflated
28  by assessment of unauthorized and/or unlawful fees assessed.  (Id. ¶ 56.)

While awaiting a decision from BANA regarding a Permanent Modification, Plaintiffs sent several Requests for Information ("RFI") and Notice of Errors ("NOE") to BANA and Caliber, pursuant to Regulations X and Z, as amended through RESPA and TILA.  (Id. ¶ 57.)  Plaintiffs allege that BANA and Caliber violated RESPA by failing to acknowledge receipt and failing to respond or failing to accurately respond to their RFIs and NOEs.

**Discussion**

**A.    Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as

true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff.  al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).  The court evaluates lack of statutory standing under the Rule 12(b)(6) standard.  Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

**B.    Requests for Judicial Notice**

Defendants BANA and U.S. Bank filed a request for judicial notice.  (Dkt. No. 10-2.)  Defendant Caliber also filed a request for judicial notice.  (Dkt. No. 12-2.)  Plaintiffs oppose.  (Dkt. Nos. 15, 17.)  Defendants did not reply to Plaintiffs' opposition.

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  However, two exceptions exist where a district court may take consider "material which is properly submitted as part of the complaint" or if the documents are not attached to the complaint, they may be considered if the documents' "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them.  Id. (citations omitted).  In addition, a court may take judicial notice of "matters of public record" under Federal Rule of Civil Procedure ("Rule") 201.  Id. at 688-89.  Under Rule 201, a court may not take judicial notice of a fact that is "subject to reasonable dispute."  Fed. R. Evid. 201(b).  If the contents of a matter of public record are in dispute, the court may take notice of the fact of the document at issue but not of the disputed information contained within.  See id. at 689-90.

Here, BANA and U.S. Bank seek judicial notice of the contents of documents referenced in the FAC and recorded in the San Diego County Recorder's Office. BANA requests judicial of the deed of trust dated May 24, 2005, (FAC ¶ 41), Notice of Default recorded on February 14, 2012, (Id. ¶ 45), Substitution of Trustee recorded on February 12, 2014, (FAC ¶ 43), Notice of Trustee's Sale recorded on May 29, 2014, (Id. ¶ 45), Assignment of Deed of Trust filed on February 16, 2012, (Id. ¶ 44), and Assignment of Deed of Trust recorded on June 17, 2015, (Id. ¶ 17.)   The FAC also references the documents in Caliber's request for judicial notice, (Dkt. Nos. 10-2 to 10-4) which include the deed of trust dated May 24, 2005, (FAC ¶ 41), and the Deed of Trust and Assignment of Rents signed on May 24, 2005, (Id. ¶ 42.)   In response, Plaintiffs dispute the content, legal effects, and authenticity of the documents.

Because Plaintiffs dispute their contents, the Court can only take judicial notice of the fact of the document but not the contents contained in the document.   Moreover, the attached documents are not originals, but are copies, and therefore are not self-authenticating.  See Fed. R. Evid. 902(4) (certified copies of public records require the custodian or other authorized person to certify that the copies are correct.) Defendants have not provided certified copies of these documents.   Thus, Court DENIES BANA, U.S. Bank and Caliber's requests for judicial notice of the contents of the documents.

**C.     First Cause of Action - Violation of Regulation X under RESPA and Regulation Z under TILA as to Defendants BANA and Caliber**[3]

Plaintiffs allege that Defendants BANA and Caliber willfully and intentionally failed to comply with the Requests for Information ("RFI") provisions of Regulation X of RESPA and Regulation Z of TILA.  (Dkt. No. 8, FAC ¶ 96.)

As an initial mater, Plaintiffs do not cite to provisions of TILA that Caliber or

---

[3]BANA argues that the RESPA claim against U.S. Bank fails because it was not a servicer of the loan; however the argument is unnecessary because the first cause of action is against BANA and Caliber only and not U.S. Bank. (Dkt. No. 8, FAC at 21.)

1  BANA violated. While the FAC generally cites to Regulation Z of TILA, no specific

2  facts are alleged as to any violations of Regulation Z pursuant to TILA.  Therefore, the

3  Court dismisses the Regulation Z cause of action.[4]  See Evans v. Nationstar Mortgage,

4  LLC, No. 15cv1213 JAM GGH PS, 2015 WL 6756255, at *6 (E.D. Cal. Nov. 5, 2015)

5  (granting motion to dismiss TILA because mere reference to TILA is not sufficient to

6  state a claim but Plaintiff must explain which allegations support a violation).

7      RESPA requires servicers of federally related mortgage loans to comply with

8  certain disclosure requirements when it receives a qualified written request ("QWR").

9  12 U.S.C. § 2605.  A qualified written request is defined as:

10  a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

11  (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

12  (ii) includes a statement of the reasons for the belief of the borrower,

13  to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

14

15  12 U.S.C. § 2605(e)(1)(B).  A servicer is required to respond to QWRs by a borrower

16  only to the extent it seeks "information relating to the servicing of [the] loan."  12

17  U.S.C. § 2605(e)(1)(A).  Servicing is defined as "receiving any scheduled periodic

18  payments from a borrower pursuant to the terms of any loan . . . and making the

19  payments of principal and interest and such other payments with respect to the amounts

20  received from the borrower." 12 U.S.C. § 2605(i)(3).

21      On January 10, 2014, the Mortgage Servicing Rules under the Real Estate

22  Settlement Procedures Act, amended Regulation X of RESPA pursuant to the Dodd-

23

24

25

26      [4]Caliber moves to dismiss the TILA provision for failing to cite to provisions of

27  TILA that it violated.  BANA does not move to specifically dismiss the TILA claim based on Plaintiffs failure to allege specific facts; it moves to dismiss generally both

28  Regulation X and Regulation Z on the merits.  However, the FAC does not allege any facts to support violations of TILA and therefore, the TILA claim must be dismissed.

Frank Wall Street Reform and Consumer Protection Act of 2010[5], which is codified at 12 C.F.R. § 1024. <u>Evans</u>, 2015 WL 6756255, at *7. One of the amendments increases a loan servicer's duty to respond to qualified written requests. <u>Id.</u> If a mortgage loan servicer receives a request for information ("RFI") from a borrower, the servicer must provide a written response acknowledging receipt within five days. 12 U.S.C. § 2605(e)(1); 12 C.F.R. § 1024.36(c). The loan servicer must then respond to the inquiry not later than thirty days. 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.36(d). However, a request for the identify of and address or other relevant contact information for the owner or assignee of mortgage loan requires a response within 10 days. 12 C.F.R. § 1024.36(d)(2)(A); 12 U.S.C. § 2605(k)(1)(D).

Servicing, as defined under RESPA, "does not include the transactions and circumstances surrounding a loan's origination - facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." <u>Medrano v. Flagstar Bank, FSB</u>, 704 F.3d 661, 666-67 (9th Cir. 2012). In <u>Medrano</u>, the Ninth Circuit affirmed the district court's dismissal of the RESPA claim concluding that letters from borrowers to servicer that challenged terms of the loan and mortgage documents, that loan documents did not "accurately reflect the proper payment schedule represented by the loan broker", and demanding monthly payment be reduced because borrowers were told, when they purchased their home, that those payments would not exceed $1,900 did not give rise to duty to respond. <u>Id.</u> at 667. Therefore, requests for documents and information "relating to the original loan transaction and its subsequent history" do not qualify as QWRs. <u>Junod v. Dream House Mortg. Co.</u>, No. CV 11-7035-ODW(VBKx), 2012 WL

---

[5]"Congress gave the Department of Housing and Urban Development ("HUD") authority to regulate under RESPA, and HUD promulgated the corresponding regulations known as Regulation X. The Dodd–Frank Wall Street Reform and Consumer Protection Act transferred the regulatory authority of RESPA from HUD to the Consumer Financial Protection Bureau ("CFPB"), and CFPB later republished Regulation X without material changes." <u>Edwards v. First American Corp.</u>, 798 F.3d 1172, 1179 (9th Cir. 2015) (concerning anti-kickback provision of RESPA).

94355, at *4 (C.D. Cal. Jan. 5, 2012); see also Consumer Solutions REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) (dismissing plaintiff's RESPA claim with prejudice after observing that the requirement "[t]hat a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan."). In addition, requests relating to loan modification are not related to "servicing" of the loan. Smallwood v. Bank of America, N.A., Case No. 15cv336, 2015 WL 7736876, at *6 (S.D. Ohio, Dec. 1, 2015) (citing "Mbakpuo v. Civil Wells Fargo Bank, N.A., No. 13-2213, 2015 WL 4485504, at *8 (D. Md. July 21, 2015) (request for a loan modification did not relate to servicing of a loan); Mayer v. EMC Morg. Corp., No 2:11-cv-147, 2014 WL 1607443, at *5-6 (N.D. Ind. April 22, 2014) (same); Van Egmond v. Wells Fargo Home Mortg., No. 12-0112, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) (RESPA only obligates loan services to respond to borrowers' requests for information relating to servicing of their loans, which does not include loan modification information)").

Once a servicer receives a proper QWR, it must make corrections in the borrower's account, or conduct an investigation, provide the borrower with a written explanation and provide the contact information of someone who can assist the borrower. 12 U.S.C. § 2605(e)(2)(A)-(C).

**1.   BANA**

  **a.   First RFI**

Around February 16, 2015, Plaintiffs mailed their first RFI to BANA at its designated address by certified mail with the subject matter, "Request for Information" and titled "Re: REQUEST FOR INFORMATION UNDER REGULATION X 12 C.F.R. § 1024.36 AND REGULATION Z UNDER 12 C.F.R. § 1026.36 et. seq." (Id. ¶ 67.) The RFI requested "section of the Pooling and Service Agreement (PSA) between [BANA] and the owner of the subject loan, including the mortgage-loan schedule; sections addressing loss mitigation requirements and rules; as well as section

that restrict Defendant in negotiating, offering, processing or approving loss mitigation options." (Id. ¶ 68.)  BANA timely acknowledged the first RFI but failed to provide any response.  (Id. ¶ 69.)  Later, the FAC also alleges BANA "failed to provided (sic) the requested information by the statutory deadline of April 3, 2015."  (Id. ¶ 102.)

BANA claims that the documents sought are not proper QWRs that are subject to the disclosure requirements under 12 C.F.R. § 1024.36.  Second, BANA argues that Plaintiffs failed to meet standard under Rule 8 by failing to specify how it failed to respond to the letters.  In response, Plaintiffs argue that they properly alleged violations of Regulation X.[6]

Here, a request for information concerning specific sections of the Pooling and Service Agreement ("PSA") does not relate to "servicing" of the loan, and is not subject to the RESPA requirements.  See Junod, 2012 WL 94355, at *3 (information about the PSA does not constitute a "servicing" request).

In addition, even if the PSA was related to "servicing," the FAC fails to sufficiently allege why BANA's response was inadequate.  The FAC alleges that BANA failed to provide any response, (Dkt. No. 8, FAC ¶ 69), and then also, in contradiction, alleges that BANA failed to provide the requested information by the statutory deadline, implying that a response was made but was inadequate.  (Id. ¶ 102.)  If Plaintiffs allege that BANA's response was inadequate, they must provide facts to provide BANA notice as to why its response was not complete.  See Norris v. Bayview Loan Serv., LLC, Case No. CV15-643-MWF(DTBx), 2016 WL 337381, at *5 (C.D. Cal. 2016) (catchall assertion that the defendant did not "provide accurate and complete responses" is insufficient to state claim under Rule 8); see also Saterbak v. Nat'l

---

[6]Plaintiffs also argue and cite to the Federal Register regarding the servicer's duty to provide accurate information regarding loss mitigation options.  (Dkt. No. 16, Ps' Opp. at 8.)  However, Plaintiffs have not demonstrated how loss mitigation options are subject to the disclosure provisions of 12 C.F.R. § 1024.36, which is the basis of the first cause of action.  Disclosure requirements regarding loss mitigation options are provided in 12 C.F.R. § 1024.41 when a borrower submits a loss mitigation application.  Here, Plaintiffs have not alleged they submitted a loss mitigation application.

[16cv513-GPC(MDD)]

Default Serv. Corp., Civil No. 15cv956-WQH-NLS, 2015 WL 5794560, at *19 (S.D. Cal. 2015) (allegations not sufficient where Plaintiffs allege that information provided by servicer was "inadequate and incorrect," without providing facts to support the conclusion).   A general statement that BANA failed to provide the requested information does not state a claim for violation of Regulation X.   Thus, the Court GRANTS BANA's motion to dismiss the Regulation X violations as to the first RFI.

### b.   Second RFI

Around February 16, 2015, Plaintiffs mailed a second RFI to BANA which was received on February 19, 2015. (Dkt. No. 8, FAC ¶ 70.)  The RFI  requested the full name and address of the entity that is the owner or assignee for the loan as well as other information.  (Id. ¶ 71.)  Specifically, the RFI requested,

> The full name and address of the entity that is the owner or assignee for this loan; If the investor is Fannie Mae or Freddie Mac, the mortgage loan is subject to recourse or an indemnification agreement; The full name and address of the Investor; The full name and address of the master servicer for the loan; The full name and address of the current servicer for the loan; a copy of the mortgage, note, allonge, all endorsements and assignments; current property value, a copy of the broker's price opinion, automated valuation, appraisal or any other document relied upon to determine said value; the date and amount of the last payment received; the amount required to bring the loan current; the last monthly periodic statement (mortgage statement).

(Id.)  Defendant timely acknowledged receipt of RFI.  (Id. ¶ 104.)   Defendant did not timely respond but provided two reinstatement quotes, which contained inconsistent or unsubstantiated fees and charges.  (Id. ¶¶ 72, 104.)  Defendant did not provide any information regarding the owner of the loan, copy of any allonges/endorsements/assignment of the Note, the investor information of the loan or any of the loss mitigation information requested.  (Id.)

BANA argues it had no duty to provide any information concerning the owner of the loan.  Plaintiffs provide general arguments that BANA failed to comply with Regulation X but provides no legal authority whether seeking information about the owner of the loan constitutes "servicing" under the regulations.

BANA cites to many cases that have held that requests for information relating

to the identity of the note holder or master servicer do not relate to servicing. (See Dkt. No. 10-1, BANA's Mot. at 6-7.)  While the majority of district courts have held that RESPA does not require a loan servicer to provide information concerning loan ownership, in Davis v. Greenpoint Mortg. Funding, Inc., 09cv2719-CC-LTW, 2011 WL 7070222, at *3 (N.D. Ga. Sept. 19, 2011), the court noted that those decisions provide "little, if any, analysis . . . regarding why the identity of the entity for whom a loan servicer is receiving payments is not related to servicing." Id.  The court held that after a thorough analysis of the statutory language, the underlying policy of the statute, the clarifying statement by HUD and relevant case law, the court concluded that the "identity of the owner of the loan relates to the servicing of the loan, given that the servicing is done on the owner's behalf." Id.  A minority of district courts have held the contrary. See Selby v. Bank of America, Inc., No. 09cv2079 BTM(JMA), 2011 WL 902182, at *5 (Mar. 14, 2011) (plaintiff's requests for "contact information for the 'Master Servicer' of the obligation, her request for a current statement of late charges and penalties and arguably her request for the identity and contact information for the owner of her note" stated a claim for violations under 12 U.S.C. §§ 2605(e)(2); 2605(k).); Woods v. Greenpoint Mortg. Funding, Inc., No. CIV. 2:09-1810 WSB KJM, 2010 WL 1729711, at *7 (E.D. Cal. Apr. 28, 2010) ("Information regarding oh [sic] whose behalf the servicer is accepting loan payments seems to clearly be related to the servicing of plaintiff's loan and a proper subject of a QWR under RESPA.").

RESPA includes a provision which states that a servicer must respond "within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan." 12 U.S.C. § 2605(k)(1)(D); 12 C.F.R. § 1024.36(d)(2)(i)(A).  Because RESPA and Regulation X specifically provide timelines to respond to a request for the contact information of the owner or assignee of the loan, the Court can only conclude that a request for information for the identity of the owner of the loan falls under RESPA and Regulation X.  12 C.F.R. § 1024.36(d)(2)(i)(A); 12 U.S.C. § 2605(e)(2).

[16cv513-GPC(MDD)]

Plaintiffs seek numerous documents that pertain to the servicing of her loan such as the name and address of the owner or assignee of the loan, the full name and address of the master servicer for the loan, the full name and address of the current servicer for the loan, the date and amount of the last payment received, the amount required to bring the loan current and the last mortgage statement. Therefore, the Court concludes Plaintiffs have sufficiently alleged a claim under 12 C.F.R. § 1024.36 for these documents.

Other documents Plaintiffs seek, such as the investor information, an indemnification agreement, a copy of the mortgage, note, allonge, all endorsement and assignments, current property value, copy of the broker's price opinion, automated valuation, and appraisal, do not relate to servicing but to the loan origination. See id. at 5 (entities to whom the note has been sold or transferred, entities to which Plaintiff's mortgage or deed of trust has been assigned, a copy of the note with all endorsements and any allonge, a copy of each assignment, a copy of each written notice that has been sent to the plaintiff regarding the sale or transfer or assignment of the note, a copy of all documents furnished to Plaintiff at closing). These documents sought are not "servicing" related requests and do not state a claim under 12 C.F.R. § 1024.36.

In addition, BANA's second argument that the FAC fails to sufficiently allege why BANA's response was inadequate is without merit because the FAC alleges Plaintiffs did not receive any of the requested information except for two reinstatement quotes.[7]   Plaintiffs have alleged that BANA's response was inadequate by not providing any of the requested information related to "servicing" excepting the reinstatement quotes. Therefore, the Court GRANTS in part and DENIES in part BANA's motion to dismiss the Regulation X violations as to the second RFI.

### c.   Third RFI

Around April 17, 2015, Plaintiff mailed a third RFI, by certified mail, which was

---

[7]The reinstatement quotes address Plaintiffs' request for information for the amount required to bring the loan current. (Dkt. No. 8, FAC ¶ 71.)

received by Defendant on April 22, 2015.  (Id. ¶ 73.)  It sought "further information regarding the LSF9 trust, particularly, available loss mitigation options available, the criteria for determination of eligibility for such options, and processes for applying for the options as well as a copy of a borrower solicitation package for loss mitigation." (Id. ¶ 74.)  According to Plaintiffs, BANA failed to acknowledge receipt within 5 business days and failed to completely and accurately respond to the requested information in the RFI.  (Id. ¶ 75.)  In addition, BANA failed to provide a complete response to Plaintiffs' request to provide any and all loss mitigation options available and a timeline for the alternative process in violation of 12 C.F.R. § 1024.36(d)(2)(i)(B).  (Id.)

BANA argues that the third RFI concerns information related to loan modification so it was not required to respond.  It also contends that Plaintiffs' catchall assertion that BANA did not provide accurate and complete responses are not sufficient to state a claim under Rule 8.  Plaintiffs generally disagree with BANA's argument.

The information sought in the third RFI is not subject to 12 C.F.R. § 1024.36 because it only seeks information related to modification of the loan which is not related to "servicing" and Plaintiffs' fail to state a claim on the third RFI.

In addition, the FAC fails to sufficiently allege why BANA's response was not adequate or complete.  See Norris, 2016 WL 337381, at *5 (catchall assertion that the defendant did not "provide accurate and complete responses" is insufficient to state claim under Rule 8).  Accordingly, the Court GRANTS BANA's motion to dismiss the Regulation X violations on the third RFI.

### d. Notice of Error

Around December 9, 2015, Plaintiffs sent BANA a Notice of Error ("NOE") pursuant to 12 C.F.R. § 1024.35 addressing the conflicting figures identified in the life of the loan history which was provided by Caliber, its successor, in response to their RFIs.  (Id. ¶ 89.)  BANA failed to acknowledge or respond to the NOE.  (Id. ¶ 90.)

BANA argues that Plaintiffs have failed to either attach a copy of the December

9, 2015 NOE letter to the FAC or provide specific facts as to the contents of the alleged error.

> A Notice of Error is

> > any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. . . .A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

12 C.F.R. § 1024.35(a).  A servicer must provide the borrower a written response acknowledging receipt of the notice of error within five days of receiving the NOE. 12 C.F.R. § 1024.35(d).  Servicers are required to response to the NOE by either correcting the error and providing the borrower with written notification of the correction, effective date of the correction, and contact information or conduct a reasonable investigation and provide the borrower with a written notification about the investigation. Id. § 1024.35(e)(1).  The servicer must comply with these requirements no later than seven days after the servicer receives the NOE. 12 C.F.R. § 1024.35(e)(3)(i)(A).

For a violation of 12 C.F.R. § 1024.35(e), Plaintiff must allege facts of when the letter was sent, to whom it was directed, why it was sent, and the contents of the letter so that it may determine if the letter qualifies as a NOE.  See Kilgore v. Ocwen Loan Serv., LLC, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015) (conclusory allegation that a plaintiff submitted an NOE does not state a plausible claim under RESPA).

Here, Plaintiffs summarily allege that the NOE raised an issue as to conflicting figures in the life of the loan history, and fail to assert specific facts as to the conflicting figures given the long length of the loan history.  Accordingly, Plaintiffs have not alleged a claim concerning the NOE, and the Court GRANTS BANA's motion to dismiss the Regulation X violations as to the NOE.

In sum, the Court GRANTS in part and DENIES in part BANA's motion to dismiss the claims under Regulation X of RESPA with leave to amend.

[16cv513-GPC(MDD)]

### 2.    Caliber

Caliber argues that Plaintiffs fail to state a claim under 12 C.F.R. § 1024.36 of RESPA.   Plaintiffs argue that as to the three RFI's, Caliber failed to timely acknowledge receipt pursuant to 12 C.F.R. § 1024.36(c) and failed to respond to the requests by either producing the requested information or sending a written explaining of why it was not required to provide the requested information pursuant to 12 C.F.R. § 1024.36(f).[8]

### a.    First RFI

The FAC alleges that around July 16, 2015, Plaintiffs sent their first RFI to Caliber whose subject matter was "Request for Information" and titled "Re:REQUEST FOR INFORMATION UNDER REGULATION X 12 C.F.R. § 1024.36 AND REGULATION Z UNDER 12 C.F.R. § 1026.36 et. seq" to Defendant's designated address. (Id. ¶ 76.)  In that request, they specifically sought "a copy of the promissory note or other evidence of indebtedness, deed of trust or mortgage; any assignment of the mortgage or deed to trust to demonstrate right to foreclose; and payment history since the borrower was last less than 60 days past due." (Id. ¶ 77.)  Caliber allegedly failed to timely acknowledge the RFI within five business days but  provided Plaintiffs with a recorded copy of DOT 1, Assignment 2, and Plaintiffs' payment history. (Id. ¶ 78.)  According to Plaintiffs, these responses were not a complete response to the information requested. (Id.)

Caliber argues that, in fact, Plaintiffs allege that Caliber complied with the first RFI.   The Court agrees.   The FAC alleges that Caliber provided Plaintiffs with evidence of indebtedness, a copy of DOT 1, a copy of the assignment of the DOT, and Plaintiffs' payment history. (Id. ¶ 77.)  Caliber appears to have provided all the information sought by Plaintiffs in the first RFI.

---

[8]This section concerns what information is not required to be provided by the servicer to the borrower.  It appears that Plaintiffs may have meant to cite to 12 C.F.R. § 1024.36(d) which addresses the response requirement when a borrower submits a request for information.

Caliber has not addressed why it failed to timely acknowledge the RFI within five business days. Thus, Plaintiff has sufficiently allege a violation of 12 U.S.C. § 1024.36(c) for Caliber's alleged failure to timely acknowledge the RFI within five business days. The Court DENIES Caliber's motion to dismiss as to the first RFI.

**b.    Second RFI**

Around July 16, 2015, Plaintiffs sent a second RFI to Defendant which specifically requested the full name and address of the entity that is the owner or assignee for the loan.  (Id. ¶ 80.)  They also sought the following:

> If the investor is Fannie Mae or Freddie Mac, the mortgage loan is subject to recourse or an indemnification agreement; The full name and address of the Investor for the borrower's loan; The full name and address of the master servicer for the borrower's loan; The full name and address of the current servicer for the borrower's loan; and the current property value, a copy of the broker's price opinion, automated valuation, appraisal or any other document relied upon to determine said value.

(Id. ¶ 80.) According to the FAC, Caliber failed to timely acknowledge the second RFI within five business days and failed to provide timely and complete responses to the requests.  (Id. ¶ 81.)

Caliber argues that Plaintiffs' allegations are vague and conclusory and do not specify what responses Caliber provided; therefore, it cannot address the nature of the deficiencies.[9]  Plaintiffs oppose arguing Caliber's factual disputes cannot be raised on a motion to dismiss.

A general allegation that Caliber failed to provide complete responses to the request does not state a claim under Rule 8.  See Norris, 2016 WL 337381, at *5; Saterbak, 2015 WL 5794560, at *19.  As to the second RFI, the Court concludes that Plaintiffs have not sufficiently alleged facts to put Caliber on notice as to what Caliber

---

[9]In a footnote, Caliber argues that 12 C.F.R. § 1024.36 does not require a servicer to respond to any request that is the same as previously requested and complied with. Caliber argues that it previously provided information about the owner and investor when it sent Plaintiffs copies of the assignment of the deed of trust. However, the Court notes that even if Caliber is exempt from providing duplicative information, the regulations require the servicer to notify the borrower of this determination in writing no later than five days after making such determination.  See 12 C.F.R. § 1024.36(f).

[16cv513-GPC(MDD)]

responded with and how it failed to respond.[10]   Therefore, the Court GRANTS

Caliber's motion to dismiss the claim for violation of Regulation X for the second RFI.

### c.     Third RFI

Around July 16, 2016, Plaintiffs send a third RFI to Defendant and specifically

requested a copy of the Servicing File which include,

> Any notes created by servicer personnel reflecting communications
> with the borrower about the mortgage loan account; [t]o the extent
> applicable, a report of the data fields relating to the borrower's
> mortgage loan account created by the servicer's electronic systems in
> connection with servicing practices; and [c]opies of any information or
> documents provided by the borrower to the servicer in accordance with
> the procedures set forth in § 1024.35 or § 1024.41. 12 C.F.R. Section
> 1024.38(c). As well as sections of the PSA between CALIBER and the
> true owner of the loan which listed the covered loan for the pool
> (mortgage-loan schedule), provisions dealing with loss mitigation
> requirements and sections that addressed the restrictions, if any, in
> negotiating, offering, processing or approving loss mitigation options.

(Id. ¶¶ 82, 83.)  According to the FAC, Caliber failed to timely acknowledge the third

RFI within five business days and failed to provide any response to the requests.  (Id.

¶ 84.)

Caliber argues that it was not required to respond to the third RFI because it

sought information that was unreasonable or overbroad to include the entire servicing

file, including the nine previous years Caliber was not the loan servicer and other

information was irrelevant such as the PSA and cites to 12 C.F.R. §§ 1024.36(f)(iii),

(iv).  However, the Court notes that if Caliber reasonably believed it did not have to

comply with 12 C.F.R. § 1024.36(c) & (d), the servicer must notify the borrower of its

determination that the requirements are not applicable in writing no later than five days

after making such a determination.  12 C.F.R. § 1024. 36(f)(2).  Even if Caliber

believed it was not required to respond, it was required to notify the borrower of this

determination.  Plaintiffs allege that Caliber did provide any response to the RFI.

---

[10]The Court also notes that while the argument was not raised by Caliber, BANA's argument concerning the inapplicability of RESPA to inquiries concerning loan modification and information concerning the original loan transaction and its subsequent history would apply to Caliber.  See Medrano, 704 F.3d at 666-67; Smallwood, 2015 WL 7736876, at *6.

1    The Court DENIES Caliber's motion to dismiss the claims under Regulation X
2    as to the third RFI.

3                    **d.      Notice of Errors**

4        Around December 8, 2015, Plaintiffs sent two Notice of Errors ("NOE") to
5    Caliber pursuant to 12 C.F.R. § 1024.35 addressing Caliber's failure to timely
6    acknowledge receipt of the July 16, 2015 RFIs and failing to timely, completely and
7    accurately respond to the requested information.  (Dkt. No. 8, FAC ¶¶ 88, 118, 119.)
8    Caliber acknowledged Plaintiffs' NOEs but failed to address or correct the erroneous
9    information identified in the NOEs.  (Id. ¶¶ 91, 123.)

10       Caliber merely argues that because Plaintiffs' claim under 12 C.F.R. § 1024.36
11   fail, then their reliant claim under 12 C.F.R. § 1024.35 fails.  Plaintiffs contend that
12   Caliber failed to provide accurate information about loss mitigation options and
13   foreclosure pursuant to 12 C.F.R. § 1024.39.  Both parties' arguments are without
14   merit.  First, as discussed above, because Plaintiffs stated a cause of action under 12
15   C.F.R. § 1024.36 on some claims, Caliber's argument fails.  Second, Plaintiffs'
16   argument is faulty because they do not assert causes of action under 12 C.F.R. §
17   1024.39.

18       Based on the allegations in the FAC, the Court concludes that based on Rule 8,
19   Plaintiffs have not sufficiently alleged why Caliber's response was inadequate.  See
20   Norris, 2016 WL 337381, at *5 (catchall assertion that the defendant did not "provide
21   accurate and complete responses" is insufficient to state claim under Rule 8).
22   Therefore, the Court GRANTS Caliber's motion to dismiss the claim for violation of
23   12 C.F.R. § 1024.35 as to the NOEs.

24                    **e.      Damages**

25       Lastly, Caliber argues that the FAC fails to sufficiently allege any pecuniary
26   damages arising from the purported violation of the RESPA.  Plaintiffs do not address
27   this argument.

28       RESPA requires a borrower to demonstrate actual damages as a result of the

servicer's failure to comply with RESPA.  12 U.S.C. § 2605(f).  "A number of courts have read the statute [12 U.S.C. § 2605(f)] as requiring a showing of pecuniary damages in order to state a claim."  <u>Allen v. United Fin. Mortg. Corp.</u>, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009); <u>Ghuman v. Wells Fargo Bank, N.A.</u>, 989 F. Supp. 2d 994, 1006-07 (E.D. Cal. 2013) (a "RESPA's claim's failure to allege a pecuniary loss resulting from a failure to respond is fatal to the claim.").  Courts have "liberally" interpreted the requirement to plead actual damages.  <u>Yulaeva v. Greenpoint Mortg. Funding, Inc.</u>, No. 09-1504 LKK KJM, 2009 WL 2880393, at *15 (E.D. Cal. Sept. 9, 2009) (allegation that plaintiff was required to pay a referral fee adequate alleged pecuniary loss).  Costs incurred by a debtor in mailing QWRs to loan servicer were "actual damages" as a result of the servicer's failure to comply with RESPA.  <u>Marais v. Chase Home Finance, LLC</u>, 24 F. Supp. 3d 712, 728 (S.D. Ohio 2014).  In addition, the over calculation and overpayment of interest on a loan, the costs of repairing the plaintiff's credit, the reduction and/or elimination of the plaintiff's credit limits, and attorney's fees and costs are sufficient to allege actual damages.  <u>Pendleton v. Wells Fargo Bank, N.A.</u>, 993 F. Supp. 2d 1150, 1153 (C.D. Cal. 2013).  Furthermore, emotional distress and mental anguish fall may constitute "actual damages" under RESPA.  <u>Hutchinson v. Delaware Sav. Bank FSP</u>, 410 F. Supp. 2d 374, 383 n. 14 (D.N.J. 2006) ("It is unclear whether 'actual damages' under RESPA encompasses emotional distress. The district courts are split and no Court of Appeals has addressed the issue.") (citing cases); <u>Phillips v. Bank of America Corp.</u>, No. 10cv4561 EJD, 2011 WL 4844274, at * 5 (N.D. Cal. Oct. 11, 2011) (noting also that district courts in California are divided on whether damages for emotional and mental distress are pecuniary damages to support a claim under RESPA but appears that more cases hold that emotional harm is sufficient to recover actual damages under RESPA).

Here, Plaintiffs allege damages of expending time and money to correct the errors, including costs of copying documents, postage fees, loss of work fees, traveling expenses to and from the attorney's office, interest and penalties on the loan, emotional

1  and psychological trauma.  (Dkt. No. 8, FAC ¶ 126.)  Based on the cases cited, the

2  Court concludes that Plaintiffs have sufficiently alleged actual damages for violations

3  of Regulation X.

4  **D.     Second Cause of Action - Negligence as to all Defendants**

5          Under California law, the elements of a claim for negligence are that: (1)

6  defendant had a legal duty to plaintiff, (2) defendant breached this duty, (3) defendant

7  was the proximate and legal cause of plaintiff's injury, and (4) plaintiff suffered

8  damage.  Cal. Civ. Code § 1714; Merrill v. Navegar, Inc., 26 Cal. 4th 465, 500 (2001).

9   "The existence of a legal duty to use reasonable care in a particular factual situation

10  is a question of law for the court to decide."  Vasquez v. Residential Invs., Inc., 118

11  Cal. App. 4th 269, 278 (2004).  As a general rule, under California law, "a financial

12  institution owes no duty of care to a borrower when the institution's involvement in the

13  loan transaction does not exceed the scope of its conventional role as a mere lender of

14  money."  Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1095-96

15  (1991).  However, "liability to a borrower for negligence arises only when the lender

16  actively participates in the financed enterprise beyond the domain of the usual money

17  lender."  Id. at 1096.  This general duty of care has been applied to loan servicers.  See

18  Osei v. Countrywide Home Loans, 692 F. Supp. 2d 1240, 1249-50 (E.D. Cal. March

19  3, 2010) (defendant was lender and servicer); McCormick v. U.S. Bank, NA, 12cv433-

20  AJB(WMC), 2013 WL 990946, at *7 (S.D. Cal. Mar. 13, 2013) (stating that general

21  rule that a financial institution owes no duty of care to a borrower applies to loan

22  servicers); Shepherd v. Am. Home Mortg. Servs. , No. Civ. 09-1916 WBS GGH, 2009

23  WL 4505925, at *2 (E.D. Cal. 2009) ("[L]oan servicers do not owe a duty to the

24  borrowers of the loans they service.").

25          While there is no binding precedent, district courts have held that a loan servicer

26  has a duty of care concerning its duty to respond to a borrower's QWR.  See

27  Boessenecker v. JP Morgan Chase Bank, No.  13-0491 C MMC, 2014 WL 107063, at

28  *1 (N.D. Cal. Jan. 10, 2014) (denying motion to dismiss negligence cause of action at

this stage, predicated on defendant's failure to respond to QWRs in violation of RESPA); Tamburri v. Suntrust Mortg., Inc., No. C-11-2899-EMC, 2011 WL 6294472, at *16 (Dec. 15, 2011) (raising issue that Defendant's requirement to respond to QWRs under 12 U.S.C. § 2605 may give rise to duty of care but dismissing negligence claim because no damages were alleged); see e.g. Osei, 692 F. Supp. 2d at 1249-50 (holding contrary to many district courts that where plaintiff brought negligence claim based on the defendant's failure to make the required affirmative disclosures under RESPA, "[defendant] had a duty of care with regard to RESPA disclosures"; noting, "[a]lthough the[ ] disclosures [fell] within the scope of the lender's normal activities, each of the Biakanja[11] factors support[ed] finding a duty of care"). Moreover, in California, a duty of care may arise through a statute. Tamburri, 2011 WL 6294472, at *16 (citing Greystone Homes, Inc. v. Midtec, Inc., 168 Cal. App. 4th 1194, 1215 (2008) (noting that "'[a] duty of care may arise through statute, contract, the general character of the activity, or the relationship between the parties'").

### 1.    BANA and U.S. Bank

Defendant U.S. Bank argues that Plaintiffs failed to plead a negligence claim against U.S. Bank. Plaintiffs do not oppose. While the FAC asserts that the negligence claim is against all Defendants, it only alleges facts as to BANA and Caliber and not U.S. Bank. Accordingly, the Court GRANTS U.S. Bank's motion to dismiss the negligence claim.

The FAC alleges BANA had a duty of care to process and review the RFIs and NOEs pursuant to RESPA. (Dkt. No. 8, FAC ¶ 130.) BANA breached its duty by failing to acknowledge and respond to the RFIs and NOEs sent by Plaintiffs. (Id. ¶ 131.) Plaintiffs further allege that BANA breached its duty by "(1) failing to process Plaintiffs' Loan Modification solicitations in a timely manner; (2) failing to credit payments received from Plaintiffs while BANA was the apparent servicer of the loan;

---

[11] Biakanja v. Irving, 49 Cal. 2d 647 (1958) (six factor test to determine whether a duty exists).

(3) failing to provide CALBER with accurate information regarding Plaintiffs' balance; and (4) failing to timely, accurately and completely respond to Plaintiffs' RFIs and NOE letters." (Id. ¶ 132.)

BANA argues that Plaintiffs failed to allege the element of duty of care because Plaintiffs have not alleged any facts that would demonstrate that BANA was exceeding its conventional role as a lender of money, in failing to respond to alleged RFIs or NOEs.[12] BANA also argues that Plaintiffs failed to allege the element of proximate cause. In their opposition, Plaintiffs raise arguments concerning facts not contained in the negligence claim contending that BANA owed Plaintiff a duty to exercise reasonable care in processing and reviewing Plaintiffs' modification and to notify the subsequent servicer, Caliber, of Plaintiffs' acceptance of the trial payment plan and eligibility for a permanent loan modification. (Dkt. No. 16, Ps' Opp. at 9-10.)

It appears that Plaintiffs may be trying to assert a duty relating to the loan modification; however, the FAC does not allege a duty concerning the loan modification. Therefore, any allegation concerning a breach of such a duty fails. Plaintiffs only allege a duty of care by BANA in responding to their RFIs and NOEs.

_____

[12]In support to its statement that BANA does not owe Plaintiffs a duty of care to respond to RFIs or NOEs, (Dkt. No. 10-1 at 15), BANA cites to district court cases that held that there is no duty of care under RESPA and Regulation X based on the affirmative disclosure requirement to provide proper disclosures concerning the terms and conditions of the loan. See Mendoza v. Countrywide Home Loans, Inc., 2009 WL 4706350, at *2, 5 (N.D. Cal. Dec. 3, 2009) (no duty of care under Cal. Civ. Code Section 1916.7, TILA, HOEPA, RESPA, and the Regulations X and Z for failing to provide statutorily mandated disclosures); Avila v. Countrywide Home Loans, No. 10cv5485-LHK, 2011 WL 1192999, at *5 (N.D. Cal. Mar. 29, 2011) (no duty of care under TILA, HOEPA, RESPA and Regulations X and Y to provide proper disclosures concerning the terms and conditions of the loans as lenders do not owe a fiduciary duty to borrowers); Levy v. JP Morgan Chase, 10cv1493 DMS(BLM), 2010 WL 4641033, at * (S.D. Cal. Nov. 5, 2010) (no duty of care under TILA, HOEPA, RESPA and the Regulations X and Z). These cases do not address the issue in this case of whether there is a duty to respond to RFIs and NOEs under RESPA. Plaintiffs' case citations are not supportive.

Based on what is before the Court at this time[13], the Court concludes Plaintiffs have sufficiently alleged that BANA, as a loan servicer, had a duty to exercise reasonable care in processing and reviewing and responding to their RFIs and NOEs, and breach of that duty. See Boessenecker, 2014 WL 107063, at *1; Tamburri, 2011 WL 6294472, at *16.

BANA also alleges that Plaintiffs have not alleged proximate cause.  Plaintiffs do not address BANA's argument.  The proximate cause allegations in the FAC state,

> [t]he transaction was intended to affect Plaintiffs and it was entirely foreseeable that failing to discharge the respective duties alleged herein in a timely manner could cause significant harm to Plaintiffs in that the unreasonable delay caused Plaintiffs Principal balance to increase unnecessarily through assessment of default related fees, as well as causing Plaintiffs' credit to be adversely affected and causing Plaintiffs to suffer general damages, including but not limited to emotional distress, loss of income, and causing the Subject Property to be unmarketable.

(Dkt. No. 8, FAC ¶ 136.) Also, "[t]he failure to timely process and accurately respond to Plaintiffs' RFIs and NOEs has deprived Plaintiffs of the ability to seek alternative avenues of help, has damaged Plaintiffs." (Id. ¶ 137.)

> There is a close connection between Defendants' conduct and Plaintiffs' injuries. To the extent Plaintiffs otherwise would have been able to perform their obligation under the modified terms of the loan, been financially secure and been able to market or otherwise leverage the equity in the Property. In addition, Plaintiffs have and still face an imminent risk of foreclosure and this risk would have been avoided had Defendants timely and accurately applied Plaintiffs' loan modification and correctly accounted for the payments received from Plaintiffs.

(Id. ¶ 138.)

The Court concludes that in paragraphs 136 and 137 of the FAC, Plaintiffs have properly alleged that the violations of RESPA are the proximate cause of Plaintiffs' alleged injury resulting from BANA's failure to accurately and timely respond to their

---

[13] Plaintiffs did not provide the proper legal analysis on the duty of care.  They focused on the duty of care as it relates to loan modifications which is not alleged in the negligence cause of action.  If the negligence claim is raised again in the second amended complaint, and another motion to dismiss is filed, the Court expects the parties to address the legal issue of duty of care as it applies to the facts alleged in the second amended complaint.

RFIs.   However, paragraph 138 concerns the loan modification process in which Plaintiffs have not alleged a duty of care; therefore proximate cause as to the loan modification fails.

Accordingly, the Court concludes that Plaintiffs have properly alleged a cause of action for negligence, and DENIES Defendant BANA's motion to dismiss the negligence cause of action.

**2.     Caliber**

The FAC alleges that Caliber owed Plaintiffs a duty to exercise reasonable care in processing and reviewing their RFIs and NOEs.  (Id. ¶ 130.)  Caliber breach its duty by: (1) failing to maintain accurate servicing records of Plaintiffs' loan; and (2) failing to fully, accurately and timely respond to Plaintiffs' RFIs.  (Id. ¶ 133.)

Caliber, as servicer of the loan, argues that it owes no duty to Plaintiffs[14] and even if it did, Plaintiffs do not allege a breach of that duty or resulting damages.  First, Plaintiffs have not alleged a relationship beyond that of loan servicer/borrower. Plaintiffs also do not allege facts suggesting Caliber acted negligently but show that it properly responded to Plaintiffs' RFI or was not obligated to respond.

In response, Plaintiffs do not address the arguments raised by Caliber but contend that the FAC alleges that when Caliber accepted servicing of the loan, it was obligated to honor any obligation owed to Plaintiffs by its predecessor in interest, and Caliber had a duty to exercise reasonable care in processing and honoring Plaintiffs' loan modification after their acceptance of the trial payment plan.  Plaintiffs next assert numerous breaches of the duty related to the loan modification. (Dkt. No. 14, Ps' Opp. at 9-10.)

As with BANA, Plaintiffs present arguments, in their opposition, concerning

---

[14]Caliber cites Castaneda v. Saxon Mort. Servs., Inc., 687 F. Supp. 2d 1191, 1198 (2009) in support which held that a servicer of a loan owes no duty to the borrowers. However, the duty concerned the failure to make the required disclosures to the plaintiffs.  Id. at 1197.  The case did not address the duty to respond to inquiries by borrowers.

duties related to the loan modifications which are not alleged in the FAC.  The breaches alleged in the FAC concern Caliber's failure to maintain accurate servicing records and failing to fully, accurately and timely respond to the RFIs.

As with BANA, the Court concludes that based on what is before the Court, Caliber had a duty to exercise reasonable care in responding to Plaintiffs' RFIs and NOEs.  See Boessenecker, 2014 WL 107063, at *1. Tamburri, 2011 WL 6294472, at *16.  Accordingly, the Court DENIES Caliber's motion to dismiss the negligence cause of action.

**E.      Third Cause of Action - California Business & Professions Code section 17200**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  "Each of these three adjectives captures a separate and distinct theory of liability."  Rubio v. Capital One Bank, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted).

Plaintiffs' UCL claim is based on the following alleged acts:

a. Undertaking a negligent review of Plaintiffs' application for loan modification;
b. Failing to complete an evaluation of Plaintiffs for all loss mitigation options available to Plaintiffs and provide written notice if its decision on the application within 30 days of receiving the complete application, in violation of 12 C.F.R. § 1024.41(c);
c. Instituting improper foreclosure proceedings to generate unwarranted fees;
d. Concealing the true character, quality, and nature of their assessment of marked-up fees against Plaintiffs' account;
e. Clouding Plaintiffs' title to the Subject Property by recording various instruments affecting title and interest to the Subject Property; and
f. Foreclosing on the Subject Property without the legal authority to do so.

(Dkt. No. 8, FAC ¶ 146.)

BANA and U.S. Bank argue that the FAC fails to provide specific facts as to the alleged violations of the UCL and which violations apply to which Defendant.  A "plaintiff alleging unfair business practices under [the UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation."  Khoury v.

<u>Maly's of Cal., Inc.</u>, 14 Cal. App. 4th 612, 619 (1993).  The Court agrees that the UCL claim lumps all Defendants together and allege that all Defendants are conducting the same unlawful, unfair and fraudulent conduct and do not specify which Defendant committed which act.  In addition, the allegations concerning the "marked up fees" and "unwarranted fees" are conclusory and do not provide notice to Defendants as to what claims Plaintiffs are asserting.  Thus, Plaintiffs have not sufficiently alleged a claim under all three prongs.

The Court also concludes that Plaintiffs have not sufficiently alleged a UCL claim on each of the three prongs.  The unlawful prong of the UCL incorporates "violations of other laws and treats them as unlawful practices." <u>Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999).  This prong creates an "independent action when a business practice violates some other law." <u>Walker v. Countrywide Home Loans, Inc.</u>, 98 Cal. App. 4th 1158, 1169 (2002).  A UCL claim "stands or falls depending on the fate of antecedent substantive causes of action." <u>Krantz v. BT Visual Images</u>, 89 Cal. App. 4th 164, 178 (2001).

All Defendants claim that the allegations concerning the unlawful prong fails because the underlying causes of action are without merit.  Plaintiffs oppose.  Since the Court concluded that some of the underlying causes of action have merit, this argument fails.  However, the allegations relating to the UCL claim based on the unlawful prong are insufficient.  First, the only regulatory violation specifically cited is 12 C.F.R. § 1024.41(c) which relates to loss mitigation options.  Other than a conclusory allegation regarding this alleged violation, Plaintiff has failed to provide specific factual allegations.  Thus, the Court concludes that the FAC does not assert the predicate legal violations to support a UCL claim, and fails to allege a claim under the "unlawful" prong.

To state a claim under the fraudulent prong of the UCL, "it is necessary only to show that members of the public are likely to be deceived" by the business practice. <u>Prakashpalan v. Engstrom, Lipscomb and Lack</u>, 223 Cal. App. 4th 1105, 1134 (2014).

Where a plaintiff alleges fraud or a claim is grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Allegations of fraud under section 17200 must comply with Rule 9(b)  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) particularity requirement to UCL claim grounded in fraud).  A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Odom v. Microsoft Corp., 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted).  "Where a claim under the unfair prong is based upon alleged fraudulent conduct, that claim likewise must satisfy the heightened pleading requirements of Rule 9(b)." Kenery v. Wells Fargo, N.A., No. 13cv2411-BLF, 2015 WL 5138635, at *2 (N.D. Cal. Sept. 1, 2015) (citing Kearns, 567 F.3d at 1125; In re Apple In–App Purchase Litig., 855 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012)).

The FAC asserts fraudulent conduct in generalities and not with specificity. (See Dkt. No. 8, FAC ¶¶ 146, 150, 151, 154.)  In their opposition, where Plaintiffs' allegations are more succinct, they argue "Defendants' actions were also fraudulent, as evidenced by the recordation of Void Assignments of DOT 1 and DOT 2, as well as the lame substitution of the trustee into public records." (Dkt. No. 14 at 12; Dkt. No. 16 at 19.)  They also assert that "Defendants, through their authorized representatives, acted 'fraudulently,' 'unfair,' and 'unlawfully' by making false representations designed to deceive Plaintiffs and inducement to pay Defendants money that would not ultimately result in a foreclosure avoidance alternative, then recording void assignments of DOT 1 and DOT 2, while seeking to hide their conduct by failing to respond to the RFIs and NOE submitted by Plaintiffs." (Dkt. No. 14 at 12; Dkt. No. 16 at 19.) "Additionally, the charging of unnecessary and unreasonable fees on Plaintiff's loan by use of deceptive procedures and concealing the true character, quality, and nature of these assessments as alleged in the Complaint is a deceptive practice that results in injury to Plaintiff and other similarly situated borrowers." (Dkt.

No. 14 at 12; Dkt. No. 16 at 19.)

These allegations allege fraudulent conduct by Defendants. However, Plaintiffs fail to allege the who, what, when, and where concerning the misrepresentations and/or fraudulent conduct. See Odom, 486 F.3d at 553. Accordingly, Plaintiffs have not satisfied the Rule 9(b) requirement and consequently, fail to assert a cause of action under the "fraudulent" prong of the UCL.

As to the "unfair" prong, a business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999).

The FAC alleges "Defendants' acts and practices, as hereinabove alleged, constitute 'unfair' business acts under the UCL, in that said acts and practices offend public policy and are substantially injurious to Plaintiffs and all consumers. Said acts and practices have no utility whatsoever, much less sufficient utility to outweigh the substantial harm to Plaintiffs, other consumers, and homeowners." (Dkt. No. 8, FAC ¶ 147.)

As stated above, the alleged "unfair business practices" alleged in the FAC fail to state "with reasonable particularity the facts" to support the "unfair" prong of the UCL. See Khoury, 14 Cal. App. 4th at 619. To the extent Plaintiffs' allegations for "unfair" practices sound in fraud, Rule 9(b) must also be satisfied. See Kenery, 2015 WL 5138635, at *2. The FAC fails to assert with particularity the facts surrounding the alleged fraudulent conduct. Accordingly, the Court GRANTS Defendants BANA and U.S. Bank's motion to dismiss the "unfair" prong of the UCL for failing to state a claim.

Lastly, all Defendants argue that Plaintiffs do not have standing to pursue a claim under the UCL because they have not asserted an injury in fact and loss of money or property. Plaintiffs argue that they have asserted an injury in fact and loss of money

due to a loss of equity in the Property, including delinquent interest, declining property values and late fees, and costs and expenses related to protecting themselves, including attorneys' fees and the higher cost of obtaining credit due to their declining credit score.

Section 17204 requires that a plaintiff must demonstrate injury in fact and loss of money or property caused by the unfair competition.  Cal. Bus. & Prof. Code § 17204.  The purpose of this provision is "to confine standing to those actually injured by a defendant's business practices . . . . ."  Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 321 (2011).

Here, Plaintiffs allege that they have lost equity in the Property and have been subject to marked up charges and excess fees.  (Dkt. No. 8, FAC ¶ 155.)  They also allege that they are in imminent risk of losing the Property, which constitutes an injury in fact. (Id. ¶ 156.)

First, Plaintiffs have alleged an injury in fact and loss of property or money based on losing equity in the Property, and paying marked up charges and excess fees. See Sullivan v. Washington Mut. Bank, FA, No. C-09-2161 EMC, 2009 WL 3458300, at *4 (N.D. Cal. Oct. 23, 2009) (improper finance charges would constitute both injury in fact and loss of money); Sokoloski v. PNC Mortg., Civ. No. 14-1374 WBS CKS, 2014 WL 6473810, at *7 (E.D. Cal. Nov. 18, 2014) (loss of equity constitutes "lost money or property" under UCL) (citing Rufini v. CitiMortgage, Inc., 227 Cal. App. 4th 299, 310-311 (2014) (holding that plaintiff's allegation that the lender deprived plaintiff of the opportunity to pursue other means of avoiding foreclosure, leading to the loss of his home and the equity he had in it, was sufficient to constitute "lost money or property" under the UCL)).

However, Plaintiffs have not alleged an injury in fact concerning the alleged imminent risk of foreclosure, and related injunctive relief they seek.  While an initiated wrongful foreclosure sale and encumbrance on the deed of trust allege injury in fact under the UCL, Sullivan v. Washington Mut. Bank, FA, No. C-09-2161 EMC, 2009

WL 3458300, at *4 (N.D. Cal. Oct. 23, 2009) (initiation of wrongful foreclosure sale and the encumbrance on the deed of trust allege injury in fact under the UCL), the FAC does not allege a pending foreclosure that has been initiated.  Instead, the FAC asserts that a foreclosure was initiated in 2014, (Dkt. No. 8, FAC ¶ 45), but then it was canceled by BANA in October 2014.  (Id. ¶ 55.)  Therefore, the allegation that Plaintiffs are in imminent risk of losing their property does not state a claim for injury in fact or loss of money or property.  See Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1199 (E.D. Cal. 2010) (allegation that borrower "will" lose personal residence if a non-judicial foreclosure occurs does not allege facts that he has lost money or property).

In sum, the Court GRANTS all Defendants' motion to dismiss the UCL claim for failing to state a claim.

**F.     Fourth Cause of Action - Quiet Title as to all Defendants**

An action to quiet title can be brought "to establish title against adverse claims to real or personal property or any interest therein."  Cal. Civ. Proc. Code § 760.020.  A "[c]laim" is defined as "a legal or equitable right, title, estate, lien, or interest in property or cloud upon title."  Id. § 760.010(a).  To state a cause of action for quiet title, a plaintiff must allege the following in a verified complaint: (1) the property's legal description and its street address or common designation'; (2) Plaintiffs' title and the basis of the title; (3) the adverse claims to the title against which a determination is sought; (4) the date the determination is sought; and (5) a prayer for the determination of the plaintiffs' title against the adverse claims.  Cal. Civ. Proc. Code § 761.020.  In addition, a "plaintiff seeking to quiet title in the face of a foreclosure must allege tender or an offer of tender of the amount borrowed."  Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 712 (N.D. Cal. 2009) (quoting Arnolds Management Corp. v. Eischen, 158 Cal. App. 3d 575, 578 (1984)).

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."  Shimpones v. Stickney, 219 Cal. 637,

[16cv513-GPC(MDD)]

649 (1934); <u>see also</u> <u>Aguilar v. Bocci</u>, 39 Cal. App. 3d 475, 477 (1974) (trustor is unable to quiet title "without discharging his debt").  But it is not clear whether plaintiffs must allege that they are financially capable of tendering the loan proceeds or just plead an ability to tender in a cause of action to quiet title.  <u>See</u> <u>Mitchell v. Bank of America</u>, Civil No. 10cv432 L(WVG), 2011 WL 334988, at *3 (S.D. Cal. Jan. 31, 2011) (must allege plaintiffs are financially capable of tender); <u>Kimball v. Flagstar Bank FSD</u>, 881 F. Supp. 2d 1209, 1220 (S.D. Cal. 2012) (allegation that plaintiffs are "willing and able to tender any and all amounts due to Defendants" not sufficient allegation of tender); <u>but see</u> <u>Kozhayev v. America's Wholesale Lender</u>, No. CIV S–09–2841, 2010 WL 3036001, at *5 (E.D. Cal. Aug. 2, 2010) ("Here, plaintiffs' complaint does not allege that they have tendered, or are able to tender, the debt secured by the subject property."); <u>Bonner v. Select Portfolio Servicing, Inc.</u>, No. C 10–609 CW, 2010 WL 2925172, at *8 (N. D. Cal. July 8, 2010) (no claim because property was sold and he did not plead tender or the ability to make tender); <u>Juarez v. Fed. Home Loan Mortg. Corp.</u>, No. CV 10-2542, 2010 WL 3035956, at *5 (C.D. Cal. Aug. 2, 2010) ("Here, Plaintiff has failed to allege ability [to] tender.").

The FAC alleges that Plaintiffs seek to quiet title against Defendants' claims as of the date of filing of the complaint. (Dkt. No. 8, FAC ¶ 161.)  Plaintiffs are fee owners of the subject property, are currently in possession of the Property and are entitled to possession of the property and are the titleholders of the subject property according to the Grant Deed. (<u>Id.</u> ¶¶ 3, 9, 162.)  Defendants claim an adverse interest to Plaintiffs in the Real Property in the form of DOT 1 and DOT 2.  (<u>Id.</u> ¶ 166.)  Plaintiffs seek a determination of their fee simple title against Defendants. (<u>Id.</u> ¶ 168.)  Lastly, Plaintiffs offer and are ready, willing and able to tender their obligation. (<u>Id.</u> ¶ 165.)

[16cv513-GPC(MDD)]

### 1.   BANA[15] and U.S. Bank

Defendants argue that Plaintiffs cannot pursue this claim because they failed to tender the outstanding amount due under the Loan.  Plaintiffs argue that they are only required to allege a credible offer of tender, not actual tender and that the tender rule is not absolute and is not required when it would be inequitable to do so.  The cases Plaintiffs cite are cases where the plaintiff seeks to set aside a foreclosure sale.  <u>See</u> <u>Onofrio v. Rice</u>, 55 Cal. App. 4th 413, 424 (1997) (a rescission cause of action); <u>Dimock v. Emerald Props. LLC</u>, 81 Cal. App. 4th 868 (2000);<u>Alicea v. GE Money Bank</u>, No. C 09-91SBA, 2009 WL 2136969 (N.D. Cal. July 16, 2009) (wrongful foreclosure case and tender related to canceling a voidable sale); <u>Sacchi v. Mortg. Elec. Registration Sys., Inc.</u>, No. CV 11-1658 AHM(CMx), 2011 WL 2533029 (C.D. Cal. June 24, 2011) (challenging irregularities in the foreclosure process).  Here, Plaintiffs do not seek to set aside the foreclosure sale and have not addressed the tender requirement in quiet title cases.  <u>See</u> <u>Lueras v. BAC Home Loans Serv., LP</u>, 221 Cal. App. 4th 49, 87 (2013) (tender cases relating to setting aside foreclosure or preventing a foreclosure sale not applicable to tender in quiet title case).  In addition, as alleged by Caliber, Plaintiffs have failed to allege what adverse interest they are seeking to quiet title against, and which Defendant holds the claims asserted against their title.  <u>See</u> <u>Levy v. Residential Credit Solutions Inc.</u>, No. 10cv292 BEN(BLM), 2010 WL 3470656, at *3 (S.D. Cal. Sept. 2, 2010) (plaintiff has not sufficiently alleged that the loan servicer possesses an interest, let alone and adverse interest in the property); <u>Bunag v. Aegis Wholesale Corp.</u>, 2009 WL 2245688, at (N.D. Cal. July 27, 2009) (a servicer cannot assert an adverse interest to the Property).

Lastly, since the FAC is not verified, the quiet title cause of action must be dismissed.  <u>See</u> <u>Salmo v. PHH Mortg. Corp.</u>, No. CV 11-1582-ODW(PJWx), 2012 WL

---

[15]BANA claims that the quiet title, cancellation of instrument and declaratory relief should be dismissed and lumps the arguments together making it difficult to distinguish what argument falls under which claim, as the legal standard on all three causes of action differ.

84222 (C.D. Cal. Jan. 11, 2012); <u>Levy</u>, 2010 WL 3470656, at *3.[16]

Based on the above, the Court GRANTS BANA's motion to dismiss the quiet title claim with leave to amend. When Plaintiffs file a second amended complaint, they should consider the case law to determine what allegation of tender is sufficient and be able to support their allegation with legal authority if BANA files a motion to dismiss the second amended complaint.

**2.     Caliber**

Caliber argues that the quiet title claim fails because Plaintiffs have not alleged a claim adverse to them because Caliber is a loan servicer and has no claim to title. Plaintiffs do not address Caliber's argument.

The FAC summarily alleges that "Defendants' claim an interest adverse to Plaintiffs in the Real Property in the form of the trust deed recorded pursuant to the Transaction and Plaintiffs are seeking quiet title against the claims of Defendants under such trust deed (DOT 1 and DOT 2)." (Dkt. No. 8, FAC ¶ 166.)

A loan servicer cannot have an adverse interest to property. <u>See Levy v. Residential Credit Solutions Inc.</u>, No. 10cv292 BEN(BLM), 2010 WL 3470656, at *3 (S.D. Cal. Sept. 2, 2010); <u>Bunag v. Aegis Wholesale Corp.</u>, 2009 WL 2245688, at (N.D. Cal. July 27, 2009) (a servicer cannot assert an adverse interest to the Property).

The FAC does not allege that Caliber, as loan servicer, claims or has an interest,

---

[16]California district courts are currently split on the issue whether plaintiffs alleging claims for quiet title must verify their complaints in federal court. <u>Compare Briosos v. Wells Fargo Bank</u>, 737 F. Supp. 2d 1018, 1031-32 (N.D. Cal. 2010) (dismissing without prejudice plaintiff's failure to assert a quiet title claim in a verified complaint); <u>Ritchie v. Cmty Lending Corp.</u>, No. CV 09–02484 DDP (JWJx), 2009 WL 2581414, at *7 (C.D. Cal. Aug.12, 2009) (same) <u>with Gomez v. Calpacific Mortg. Consultants, Inc.</u>, No. 09–CV–2926–IEG (CAB), 2010 WL 2610666, at *5 n. 2 (S.D. Cal. June 29, 2010); <u>Fimbres v. Chapel Mortg. Corp.</u>, No. 09-CV-0886–IEG POR, 2009 WL 4163332, at *6 (S.D. Cal. Nov.20, 2009) (same); <u>Delino v. Platinum Comm. Bank</u>, 628 F. Supp. 2d 1226, 1237 (S.D. Cal. 2009) (granting motion to dismiss quiet title b/c complaint does not identify the date as of which the determination is sought, or specify which of the several Defendants named in this action are asserting an adverse claim to the Property. Furthermore, the complaint is not verified). Here, since the Court grants in part Defendants' motion to dismiss, in order to avoid further briefing on this issue, Plaintiffs should refile a verified second amended complaint.

or adverse interest in the property.  Accordingly, the Court GRANTS Caliber's motion to dismiss the quiet title claim.

## G.     Fifth Cause of Action - Cancellation of Instrument as to all Defendants

California Civil Code section 3412 provides for the cancellation of a written instrument when there is "reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable."  Cal. Civil Code § 3412.  "To plead a cause of action for cancellation of instrument, plaintiff must show that he will be injured or prejudiced if the instrument is not cancelled, and that such instrument is void or voidable."  Zendejas v. GMAC Wholesale Mortg. Corp., No. 10cv184 OWW, GSA, 2010 WL 2629899, at *7 (E.D. Cal. June 29, 2010) (granting motion to dismiss because plaintiffs failed to assert any valid reason, except that the defendants did not have the right to foreclose, why the instruments are void or voidable).  A plaintiff must provide facts, "not mere conclusions, showing the apparent validity of the instrument designated, and point out the reason for asserting that it is actually invalid."  Ephraim v. Metropolitan Trust Co. of California, 28 Cal. 2d 824, 833 (1946).

Plaintiffs seek cancellation of the following instruments, the DOT 1 and DOT 2, the Substitution of Trustee recorded around February 12, 2014, the Assignment of DOT 1 ("Assignment 2"), recorded around June 17, 2015, the Assignment of DOT 2 ("Assignment 3")[17], recorded around July 24, 2014, the Notice of Default and Notice of Trustee Sale recorded in reference to DOT 1 and DOT 2, because they are void. (Dkt. No. 8, FAC ¶ 174.)  The instruments are void because they are inaccurate and executed without legal authority by Defendants. (Id. ¶ 176.) Plaintiffs allege that if the instruments are not cancelled, they will be injured because these instruments are being used to substantiate a non-judicial foreclosure and if not cancelled, they will lose their

---

[17]The Court notes that while Plaintiffs allege cancellation of instrument on Assignment 1, (Dkt. No. 8, FAC ¶ 174), it appears they seek cancellation of instrument on Assigments 2 and 3 only.  (Id. ¶ 175.)  Plaintiffs should clarify the claim when they file the second amended complaint.

[16cv513-GPC(MDD)]

1   home.  (Id. ¶ 177.)

2   **1.   Caliber**

3   Caliber argues that Plaintiffs have failed to allege specific facts as to why the

4   instruments are void.  In opposition, Plaintiffs address arguments raised by BANA and

5   do not address Caliber's argument.  The Court agrees with Caliber that the FAC only

6   provides a summary and conclusory allegation that all the instruments are void because

7   they are inaccurate and executed without legal authority.  See Ephraim, 28 Cal. 2d at

8   833.  Accordingly, the Court GRANTS Caliber's motion to dismiss the cancellation of

9   instruments cause of action.

10  **2.   BANA and U.S. Bank**

11  For the same reasons the Court dismisses this claim as to Caliber, that Plaintiffs

12  have not provided specific facts as to why the instruments are void or voidable, the

13  Court also dismisses the claim as to BANA and U.S. Bank.

14  In addition, BANA argues that Plaintiffs' allegation that the Substitution of

15  Trustee recorded on February 12, 2014 is void because it was "executed by BANA"

16  who had no authority to substitute MTC as Trustee of DOT 1 contradicts their next

17  allegation that on February 16, 2012, the DOT 1 was assigned to BANA.

18  California Code section 2934a(a)(1) provides that a trustee may be substituted

19  by recording a substitution of trustee in the county where the property is located.  Cal.

20  Civil Code § 2934a(a)(1); Dimock v. Emerald Props., LLC, 81 Cal. App. 4th 868, 871

21  (2000) ("[b]y statute the Legislature has permitted the beneficiary of a deed of trust to

22  substitute, at any time, a new trustee for the existing trustee.").  The substitution is

23  made simply by recording a document evidencing the substitution, and once it has been

24  recorded, the new trustee succeeds to all the "powers, duties, authority and title granted

25  and delegated tot he trustee named in the deed of trust."  Dimock, 81 Cal. App. 4th at

26  871 (quoting Cal. Civil Code § 2934a(a)(4)).

27  Here, the FAC alleges that February 16, 2012, Assignment 1 was recorded

28  purporting to assign the beneficial interest of DOT 1 to BANA.  (Dkt. No. 8, FAC ¶

44.)  Then, Plaintiffs assert that the Substitution of Trustee recorded on February 12, 2014 purporting to substitute MTC as the Trustee of DOT 1 was void because BANA had no authority to execute the Substitution.  (Id. ¶ 43.)  Plaintiffs have not explained why BANA did not have authority to record the Substitution of Trustee.  Based on their allegation and by operation of law, it appears that the Substitution of Trustee is not void. Therefore, the Court also GRANTS BANA's motion to dismiss the cancellation of instrument claim related to the Substitution of Trustee filed on February 12, 2014.

Next, BANA argues that the challenge to Assignment 2, an assignment of DOT recorded on June 17, 2015 purporting to assign the beneficial interest under DOT 1 from BANA to U.S. Bank fails because it contradicts California law.  Plaintiffs do not address or provide legal authority to counter BANA's argument.

The FAC alleges that Assignment 2, an assignment of DOT 1 from BANA to U.S. Bank, is void because the Assignment was executed by Caliber as BANA's attorney in fact but there is no relationship between Caliber and either BANA or U.S. Bank and no evidence of Caliber's authority to complete this purported assignment. (Dkt. No. 8, FAC ¶ 46.)

California Civil Code section 1095 requires that "[w]hen an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact." Cal. Civil Code § 1095.

Based on the statute, a debtor can challenge the signing of an instrument transferring an estate in real property by claiming that it was not executed properly. See id.; Fonteno v. Wells Fargo Bank, N.A., 228 Cal. App. 4th 1358, 1378 (2014) (challenging signature block).  Here, Plaintiffs do not provide specific facts to explain why Assignment 2 is void based on BANA's use of Caliber as an attorney in fact.

Furthermore, BANA argues that Plaintiffs lack standing to challenge Assignment 2 because they were not parties to the assignment of their deed of trust and cannot preemptively challenge a pre-foreclosure assignment.  Plaintiffs present an

argument in one sentence challenging one of the cases cited by BANA and without addressing BANA's arguments.

The California Supreme Court has held that a "home loan borrower has standing to claim a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial interest in the deed of trust was not merely voidable but void, depriving the foreclosing party of any legitimate authority to order a trustee's sale." Yvanova v. New Century Mortg. Corp., 62 Cal. 4th 919, 942-43 (2016). Subsequent court of appeals have held that Yvanona's ruling is expressly limited to the post-foreclosure context. Saterbak v. JPMorgan Chase Bank, N.A., 245 Cal. App. 4th 808, 815 (2016) (quoting Yvanova, 62 Cal. 4th at 924, 934) (noting its ruling is a "narrow one" and "We do not address the distinct question of whether, or under what circumstances, a borrower may bring an action for injunctive or declaratory relief to prevent a foreclosure sale from going forward.")  "The Supreme Court has granted review in Keshtgar v. U.S. Bank, N.A., – Cal. 4th –, 178 Cal. Rptr. 3d 320 (2014), a case involving a pre-foreclosure challenge based on alleged deficiencies in the assignment of the deed of trust." Id. at 815 n. 4.   The California Supreme Court also granted review in another pre-foreclosure challenge in Mendoza v. JPMorgan Chase Bank, 180 Cal. Rptr. 2d 1 (2014). "On April 27, 2016, the California Supreme Court transferred the Mendoza and Keshtgar cases to the Courts of Appeal and directed those courts to vacate and reconsider their decisions in light of Yvanova." Reed v. Wilmington Trust, N.A., No. 16cv1933-JSW, 2016 WL 3124611, at *4 n.4 (N.D. Cal. June 3, 2016) (citing Mendoza v. JPMorgan Chase Bank, 368 P.3d 921 (Cal. 2016); Keshtgar v. U.S. Bank, 368 P.3d 921 (Cal. 2016)).

Since the ruling in Yvanova, district courts in the Northern District of California have predicted that the California Supreme Court would likely "limit a bar on pre-foreclosure suits only to plaintiffs who lack a specific factual basis for asserting that the foreclosing party lacks authority to do so." Reed, 2016 WL 3124611, at *4 (citing Powell v. Wells Fargo Home Mort., No. 14-cv-04248-MEJ, 2016 WL 1718189, at *8

(N.D. Cal. Apr. 29, 2016); <u>Lundy v. Selene Finance, L.P.</u>, No. 15-cv-05676-JST, 2016 WL 1059423, at *13 (N.D. Cal. Mar. 17, 2016)).  In <u>Reed</u>, the district court rejected the argument that a plaintiff does not have standing to challenge alleged defects in the assignment simply because the foreclosure had not yet occurred.  <u>Id.</u>  Instead, the court should look at whether the plaintiff has alleged a specific factual basis of his or her claim that the assignment is void such that it lacked the authority to foreclose.  <u>Id.</u>

Here, the property has not yet been sold through a trustee's sale.  (Dkt. No. 8, FAC ¶ 138.)  Neither party has addressed the development of the law since <u>Yvanova</u>. Because the Court GRANTS Defendants' motion to dismiss on other grounds, mainly failing to provide specific facts why the alleged instruments are void, the Court will not make a ruling on this issue.  Once Plaintiffs file a second amended complaint and should Defendants file a motion to dismiss based on standing to challenge the assignments, the parties are directed to address the relevant recent cases in their briefing.

Finally, Defendants argue that this claim fails because Plaintiffs have failed to tender the outstanding amount due.  Plaintiffs oppose.

Alleging facts to show tender in the amount of the indebtedness or a valid excuse to the tender requirement is necessary to state a claim for cancellation of instruments. <u>Morgan v. Aurora Loan Servs., LLC</u>, –Fed. App'x –, 2016 WL 1179733 (9th Cir. 2016).  "In an action for rescission or cancellation of instruments, a complainant is required to do equity 'by restoring to the defendant any value the plaintiff received from the transaction.'"  <u>Kimball v. Flagstar Bank F.S.B.</u>, 881 F. Supp. 2d 1209, 1225 (S.D. Cal. 2012) (pre-foreclosure case).  In <u>Kimball</u>, the district court applied the tender rule to causes of action for cancellation of instruments relating to the foreclosure process.  <u>Id.</u> at 1225-26.

In order to seek to set aside a trustee's sale based on irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt.  <u>Lona v. Citibank, N.A.</u>, 202 Cal. App. 4th 89, 112 (2011).  There are four exceptions to the

tender requirement.  First, tender is not required if the borrower's action attacks the validity of the underlying debt.  Id. at 112-13.  Second, "tender will not be required when the person who seeks to set aside the trustee's sale has a counterclaim or setoff against the beneficiary."  Id. at 113.  Third, if it would be inequitable to impose such a condition on the borrower, then tender is not required.  Id.  "Fourth, no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face."  Id.  Here, the FAC provides no tender allegations for cancellation of instruments. Therefore, Plaintiffs have failed to state claim for cancellation of instrument.

In sum, based on several grounds explained above, the Court GRANTS BANA's motion to dismiss.

**H.   Declarative Relief**

Under 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Declaratory relief should be denied if it will "neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  United States v. Wash., 759 F.2d 1353, 1356–57 (9th Cir. 1985).  A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action.  Manown v. Cal-Western Reconveyance Corp., No. 09cv1101 JM (JMA), 2009 WL 2406335, at *6 (S.D. Cal. Aug. 4, 2009); General of America Ins. Co. v. Lilly, 258 Cal. App. 2d 462, 470 (1968) (declaratory relief should not be used to allow a litigant "with a second cause of action for the determination of identical issues").

The Ninth Circuit determined that "[d]eclaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty,

[16cv513-GPC(MDD)]

insecurity, and controversy giving rise to the proceeding." <u>Eureka Fed. Sav. & Loan Assoc. v. American Cas. Co.</u>, 873 F.2d 229, 231 (9th Cir.1989).  To determine whether a controversy invokes declaratory relief, the Court must determine whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Maryland Cas. Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941).  "A claim for declaratory relief is not a stand-alone claim, but rather depends upon whether or not Plaintiff states some other substantive basis for liability."  <u>Nguyen v. JP Morgan Chase Bank</u>, No. SACV 11-01908, 2012 WL 294936, at *4 (C.D. Cal. Feb. 1, 2012) (citing <u>Glue–Fold, Inc. v. Slautterback Corp.</u>, 82 Cal. App. 4th 1018, 1023 n.3 (2000) (noting that equitable forms of remedy "have no separate viability" if plaintiff's other causes of action fail)).

Plaintiffs allege a real and present controversy and seek a declaration of rights and duties as to the validity of the DOT 1, DOT 2, Assignment 2, Assignment 3, the Notice of Default, and Notice of Trustee's Sale, and asks the Court to issue an order that Defendants have no right or interest in the Property or to use the power of sale to foreclose on or transfer ownership of the Property.  (Dkt. No. 8, FAC ¶¶ 180, 182, 183.)

### 1.    BANA, U.S. Bank and Caliber

BANA and U.S. Bank both argue that the declaratory relief fails as they are all based on the same failed theories of the quiet title and cancellation of instruments causes of action.  Caliber also asserts that the claim fails based on the same failed theories supporting the other claims and as a result, there no real, immediate controversy to adjudicate.  Plaintiffs oppose.

Here, based on the state of the pleading, the Court GRANTS Defendants' motions to dismiss the declaratory relief to the extent the Court granted Defendants' motion to dismiss the related claims and DENIES Defendants' motions to dismiss to the extent the Court denied Defendants' motion to dismiss the related claims.  <u>See</u>

Nguyen, 2012 WL 294936, at *4 (dismissing declaratory relief claim because substantive claims were dismissed).

## I.   Seventh Cause of Action - Slander of Title as to all Defendants

"The recordation of an instrument facially valid but without underlying merit will give rise to an action for slander of title." Stamas v. Cnty. of Madera, 795 F. Supp. 2d 1047, 1068 (E.D. Cal.2011) (citing Seely v. Seymour, 190 Cal. App. 3d 844, 857 (1987)).  To state a claim for slander of title, Defendants must allege "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." Manhattan Loft, LLC v. Mercury Liquors, Inc., 173 Cal. App. 4th 1040, 1051 (2009) (citation omitted).  California Civil Code section 2924 also provides that the publication of notices, such as the Notice of Default and Notice of Trustee's sale, constitute privileged communications pursuant to California Civil Code section 47.  Cal. Civil Code §§ 2924(a)(1), (a)(3), (d).  An exemption to the privilege is predicated on an allegation of malice.  Kachlon v. Markowitz, 168 Cal. App. 4th 316, 333 (2008); see Ogilvie v. Select Portfolio Serv., No. 12cv1654-DMR, 2012 WL 3010986, at *4 (N.D. Cal. July 23, 2012) (allegation that Defendants "acted in malice and disregard for the truth when they formulated false documents" is adequate to plead malice); Permito v. Wells Fargo Bank, N.A., No. C-12-00545-YGR, 2012 WL 1380322, at *8 (N.D. Cal. Apr. 20, 2012) ("Absent factual allegations of malice, a trustee's performance of the statutory procedures in a nonjudicial foreclosure is subject to the qualified, common-interest privilege of California Civil Code § 47(c)(1).").  Malice requires "that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." Kachlon, 168 Cal. App. 4th at 336 (quoting Sanborn v. Chronicle Pub. Co., 18 Cal.3d 406, 413 (1976)).

The FAC alleges that Defendants, without specifying which Defendant, falsely acting as either the trustee or the agent of the beneficiary of the DOT or the agent of

1   Defendants wrongfully and without privilege caused a notice of default and notice of
2   trustee's sale to be recorded against the subject property.  (Dkt. No. 8, FAC ¶¶ 40,
3   41[18].)  Defendants were never a trustee, beneficiary or assignee of any beneficiary of
4   any DOT recorded against the subject property.  (Id. ¶ 42.)  They published and
5   recorded false matters that they are the current owners of the subject property.  (Id. ¶
6   43.)  As a result, Defendant have slandered Plaintiffs' title to the subject property.  (Id.
7   ¶ 44.)  Such conduct was not privileged.  (Id. ¶ 45.)  The FAC also alleges that around
8   February 14, 2014, Defendant MTC Financial, Inc. recorded a Notice of Default
9   against the subject property along with two recorded notices of Trustee Sales on May
10   29, 2014 and September 16, 2014.  (Id. ¶¶ 45, 135.)

11       **1.    BANA and U.S. Bank**

12       Defendants argue that the mailing, publication and delivery of notices constitute
13   privileged communications pursuant to California Civil Code section 47 unless
14   Plaintiffs plead facts that Defendants acted with malice, which they have not done.
15   Plaintiffs argue that Defendants statements were false and were maliciously published.

16       As a threshold issue, the Court notes that Plaintiffs allege that the notice of
17   default and notice of trustee's sale were recorded by MTC, not BANA; therefore,
18   Plaintiffs have not alleged a publication by BANA.  In addition, Plaintiffs' allegation
19   that the conduct "was not privileged" (Dkt. No. 8, FAC ¶ 45), does not sufficiently
20   allege malice.  Moreover, even if the Court considers the arguments that Plaintiffs
21   present in their opposition that the statements were maliciously published because they
22   were false, such an allegation does not sufficiently allege "malice."  See Ogilvie, 2012
23   WL 3010986, at *4 (allegation that Defendants "acted in malice and disregard for the
24   truth when they formulated false documents" is not adequate to plead malice).

25       Thus, the Court GRANTS BANA's motion to dismiss the slander of title cause

26   _____

27       [18]The paragraph numbers on page 37 of the FAC are not consecutive and are
    numbered 188, 39, 40. . .  (Dkt. No. 8, FAC at 37.)  Therefore, the paragraph numbers
28   cited by the Court on the slander title cause of action are the ones on page 37 of the
    FAC.

of action.

### 2.     Caliber

Caliber argues that the slander of title against it fails because Plaintiffs do not allege that Caliber recorded the notices and the notices predate the time Caliber became the servicer, which occurred in May 2015. (Dkt. No. 8, FAC ¶ 56.)  Caliber further argues it is immune under Civil Code § 2924(b) because mailing, publications and delivery of notices are privileged communications under California section 47. Plaintiffs oppose without addressing Caliber's arguments.

Plaintiffs allege that the Notice of Default and Notice of Trustee's Sale were recorded by MTC, not Caliber. (Id. ¶ 45.)  Therefore, Plaintiffs have not stated a claim that Caliber published the notices.  Moreover, the notices predate the time Caliber became the servicer.  Lastly, Plaintiffs have not sufficiently made an allegation of malice.  Accordingly, the Court GRANTS Caliber's motion to dismiss the slander of title claim.

### Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Defendants' motions to dismiss with leave to amend to correct the deficiencies noted above.

IT IS SO ORDERED.

DATED:  June 30, 2016

HON. GONZALO P. CURIEL
United States District Judge

[16cv513-GPC(MDD)]