1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10   CHARLOTTE C. WATSON, an                CASE NO. 16cv513-GPC(MDD)
     individual, and CHARLOTTE C.
11   WATSON, as Trustee of the              **ORDER GRANTING IN PART AND**
     CHARLOTTE WATSON TRUST               **DENYING IN PART DEFENDANTS**
12   dated November 5, 2003,                **BANA, U.S. BANK AND**
                                            **CALIBER'S MOTIONS TO**
13                         Plaintiffs,      **DISMISS**

14        v.

15                                          [Dkt. Nos. 26, 27.]

16   BANK OF AMERICA, N.A., a
     business entity form unknown;
17   CALIBER HOME LOANS, INC, a
     business entity form unknown; MTC
18   FINANCIAL, INC. a business entity
     form unknown; and U.S. BANK
19   TRUST, N.A., AS TRUSTEE FOR
     LSF9 MASTER PARTICIPATION
20   TRUST, a business entity form
     unknown; U.S. BANK NATIONAL
21   ASSOCIATION, AS INDENTURE
     TRUSTEE OF THE GMACM HOME
22   EQUITY LOAN TRUST 2006-HE4, a
     business entity form unknown; and
23   DOES 1-100, inclusive,

24                         Defendants.

25        Before the Court are Defendants[1] Bank of America, N.A. ("BANA"), and U.S.

26

27   ─────────────────

28        [1]Defendants U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation
     Trust ("U.S. Bank Trust as Trustee of LSF9") and MTC Financial, Inc. have been
     served, (Dkt. No. 1 at 46), but have not appeared in the case.

Bank National Association, as Indenture Trustee of the GMACM Home Equity Loan Trust 2006-HE4's ("U.S. Bank") motion to dismiss the second amended complaint, (Dkt. No. 26), and Defendant Caliber Home Loans, Inc.'s ("Caliber") motion to dismiss the second amended complaint.  (Dkt. No. 27.)  Oppositions were filed on September 16, 2016.  (Dkt. Nos. 29, 30.)  Replies were filed on September 27 and 29, 2016.  (Dkt. Nos. 31, 32.)  The motions are submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1).  Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendants' motions to dismiss.

## Background

On February 29, 2016, the case was removed to this Court from the San Diego Superior Court.  (Dkt. No. 1.)  A first amended complaint was filed on March 21, 2016.  (Dkt. No. 8, FAC.)  On June 30, 2016, the Court granted in part and denied in part Defendants' motions to dismiss.  (Dkt. No. 23.)  On July 29, 2016, Plaintiffs Charlotte C. Watson, and Charlotte C. Watson, as Trustee of the Charlotte C. Watson Trust dated November 5, 2003 ("Plaintiffs") filed a second amended complaint ("SAC").  (Dkt. No. 25.)  The SAC alleges the following causes of action:

First Cause of Action:   violations of Regulation X  under Real Estate Settlement Procedures Act ("RESPA") and Regulation Z under the Truth  in Lending Act ("TILA") as to Defendants BANA and Caliber;

Second Cause of Action: negligence as to BANA and Caliber;

Third Cause of Action:   violations of California Business & Professions Code section 17200 *et seq.* as to all Defendants;

Fourth Cause of Action: quiet title as to U.S. Bank and U.S. Bank Trust as Trustee of LSF9;

Fifth Cause of Action:   cancellation of instruments as to all Defendants;

Sixth Cause of Action:   declaratory relief as to all Defendants; and

Seventh Cause of Action: slander of title as to all Defendants.

[16cv513-GPC(MDD)]

(Id.)  Plaintiffs allege that all defendants are "servicers", "master servicers" and/or "sub-servicers." (Id. ¶ 16.)

The SAC alleges that around May 24, 2005, Plaintiffs obtained a first lien mortgage loan in the amount of $500,000 (the "Loan") from GMAC Mortgage Corporation, ("GMAC") secured by the real property ("Property") located at 3207 S. Bonita Street, Spring Valley, CA 91977 through a Deed of Trust, ("DOT 1") recorded on June 1, 2005 with the San Diego County Recorder's Office. (Dkt. No. 25, SAC ¶ 42.)  Plaintiffs also executed a Deed of Trust and Assignment of Rents relating to a Home Equity Line of Credit of up to $94,000.00, from GMAC, secured by the same Property through a Deed of Trust ("DOT 2"), recorded on June 1, 2005. (Id. ¶ 43.)

On or about February 16, 2012, an Assignment ("Assignment 1") of DOT 1 was recorded with the San Diego County Recorder's Office, purporting to assign the beneficial interest under DOT 1 to BANA. (Id. ¶ 45.) On or about February 12, 2014, a Substitution of Trustee was recorded with the San Diego County Recorder's Office, purporting to substitute MTC Financial, Inc. ("MTC") as the Trustee of DOT 1. (Id. ¶ 44.) This substitution was purportedly executed by BANA. (Id.) However, Plaintiffs allege that BANA did not have any authority under DOT 1 to substitute MTC as Trustee of DOT 1 because Assignment 1 was recorded four days after the Substitution of Trustee.[2] (Id.) As such, the document is void and lacks any legal effect. (Id.)

On or about February 14, 2014, Defendant MTC recorded a Notice of Default ("NOD") against the Property followed by two subsequent recordation of Notices of Trustee Sales ("NTS") on May 29, 2014 and September 16, 2014, respectively. (Id. ¶ 46.) Plaintiffs allege that the attempted substitution of MTC as Trustee of DOT 1 was done without any authority because it was recorded four days after the Substitution of Trustee was recorded, and that the NOD and NTSs are thus void. (Id.)

---

[2]The Court notes that Plaintiffs have mistakenly read that Assignment 1 was recorded four days after the Substitution of Trustee; the SAC asserts that the Substitution of Trustee was recorded two years after Assignment 1 was recorded. (See Dkt. No. 26-4, BANA's RJN, Ex. 2; Dkt. No. 27-2, Caliber's RJN, Ex. C.)

According to the SAC, on or about June 17, 2015, another Assignment ("Assignment 2") of DOT 1 was recorded in the San Diego County Recorder's Office, purporting to assign the beneficial interest under DOT 1 from BANA to U.S. Bank Trust, as Trustee for the LSF9 Trust.  Assignment 2 was purportedly executed by Caliber as BANA's attorney in fact; however, there is no relationship between Caliber with either BANA or LSF9. Plaintiffs allege Assignment 2 is void.  (Id. ¶ 47.)

The SAC alleges that the Assignment ("Assignment 3") of DOT 2 which was recorded with the San Diego County Recorder's Office on or about July 24, 2014, and purports to assign the beneficial interest under DOT 2 from Mortgage Electronic Registration Systems, Inc. ("MERS") to U.S. Bank, is void because U.S. Bank and MERS were not beneficiaries of DOT 2 at the time of the assignment.  (Id. ¶ 48.) Plaintiffs assert that the loan secured by DOT 2 was removed from the GMACM HLOC Trust in 2011, following a Chapter 11 bankruptcy filing in the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 and pursuant to an Asset Purchase Agreement where Lone Star U.S. Acquisitions, LLC, purchased, as a part of a transaction, certain assets which were secured by DOT 2. (Id. ¶ 49.) This directly contradicts the purported assignment by MERS to U.S. Bank. (Id.) Plaintiffs assert that Assignment 3 is void because of the bankruptcy. (Id.)

In 2010, Plaintiffs suffered a financial hardship and sought foreclosure assistance but BANA repeatedly denied Plaintiffs' requests while concurrently attempting to foreclose on the Property.  (Id. ¶ 50.)  In late 2012, Plaintiffs sent a Qualified Written Request, ("QWR") pursuant to 12 U.S.C. § 2605 (e) of RESPA, and a Notice of Right to Cancel  pursuant to 15 U.S.C. § 1601 of ("TILA") but BANA failed to acknowledge or respond to them. (Id. ¶¶ 51-54.)  Around July 2014, Plaintiffs again attempted to obtain a loan modification from BANA but the request was summarily denied in August 2014. (Id. ¶ 55.)

On or about October 7, 2014, Plaintiffs again sought a loan modification providing BANA with notice along with supporting documentation of Plaintiffs'

material change in financial circumstance. (Id. ¶ 56.)  In response, BANA canceled the Trustee sale of the Property and within two (2) weeks offered Plaintiffs a trial modification which they accepted by tendering the required monthly payments.  (Id.) In consideration for performance under the terms of the Trial Payment Plan and tendering three (3) consecutive monthly payments of $2,591.22, BANA would offer Plaintiffs a permanent loan modification.  (Id.)  Prior to offering Plaintiffs a fair and affordable Permanent Modification, which included the fees and charges which artificially inflated the Principal Balance of the loan, BANA caused the servicing of the loan purportedly secured by DOT 1 to Caliber on May 16, 2015.  (Id. ¶ 57.)

The servicing of the loan was transferred to Caliber and Plaintiffs allege they were deprived of receiving the Permanent Modification they were qualified and entitled to receive.  (Id.)  Plaintiffs also allege that any offer of a permanent modification by BANA is void, because the principal balance of Plaintiffs' loan was artificially inflated by assessing unauthorized and/or unlawful fees.  (Id.)

While awaiting a decision from BANA regarding a Permanent Modification, Plaintiffs sent several Requests for Information ("RFI") and Notice of Errors ("NOE") to BANA and Caliber, pursuant to Regulations X and Z, as amended through RESPA and TILA.  (Id. ¶ 58.)

BANA moves to dismiss the first, third, fifth, sixth and seventh causes of action against it and U.S. Bank moves to dismiss the third, fourth, fifth, sixth and seventh causes of action. (Dkt. No. 26.)  Caliber moves to dismiss the first, third, fifth, sixth and seventh causes of action.[3]   (Dkt. No. 27.)

**Discussion**

**A.    Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under

---

[3]BANA and Caliber do not move to dismiss the negligence cause of action which the Court previously found stated a claim in the Court's prior order on Defendants' motions to dismiss.  (Dkt. No. 23.)

Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff.  al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).  The court evaluates lack of statutory standing under the Rule 12(b)(6) standard.  Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  See Desoto, 957 F.2d at

1 658; <u>Schreiber</u>, 806 F.2d at 1401.

2 **B.     Requests for Judicial Notice**

3      Defendants BANA and U.S. Bank filed a request for judicial notice ("RJN").

4 (Dkt. No. 26-2.)  Defendant Caliber also filed a request for judicial notice.  (Dkt. No.

5 27-2.)  Plaintiffs do not oppose.

6      As a general rule, "a district court may not consider any material beyond the

7 pleadings in ruling on a Rule 12(b)(6) motion."  <u>Lee v. City of Los Angeles</u>, 250 F.3d

8 668, 688 (9th Cir. 2001).   However, two exceptions exist where a district court may

9 consider "material which is properly submitted as part of the complaint" or if the

10 documents are not attached to the complaint, they may be considered if the documents'

11 "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on

12 them.  <u>Id.</u> (citations omitted).  In addition, a court may take judicial notice of "matters

13 of public record" under Federal Rule of Evidence 201[4] that are not disputed.  <u>Id.</u> at 688-

14 89.

15      Here, BANA and U.S. Bank seek judicial notice of the contents of documents

16 referenced in the SAC and recorded with the San Diego County Recorder's Office.

17 Specifically, BANA and U.S. Bank request judicial notice of the Deed of Trust

18 recorded on June 1, 2005 (DOT 1), Assignment of Deed of Trust recorded on February

19 16, 2012 (Assignment 1), and a Deed of Trust recorded on June 1, 2005 (DOT 2).

20 (Dkt. Nos. 26-2 to 26–5.)  As to the DOT 2, the Court notes that the document in the

21 RJN is not one recorded on June 1, 2005; instead, BANA attached a Deed of Trust

22 recorded on August 22, 2003 with Well Fargo Bank N.A. as the beneficiary and

23 Chicago Title Insurance Company as the Trustee.  (Dkt. No. 26-5, BANA and U.S.

24 Bank's RJN, Ex. 3.)

25      Caliber seeks judicial notice of the of the Deed of Trust recorded on May 24,

26

27      [4]"The court may judicially notice a fact that is not subject to reasonable dispute
because it: (1) is generally known within the trial court's territorial jurisdiction; or
28 (2) can be accurately and readily determined from sources whose accuracy cannot
reasonably be questioned."  Fed. R. Evid. 201.

1    2005 (DOT 1), Notice of Default recorded on February 14, 2014, Substitution of

2    Trustee recorded on February 12, 2014, Notice of Trustee's Sale recorded on May 29,

3    2014, Assignment of Deed of Trust (DOT 1) recorded on February 16, 2012

4    (Assignment 1) and Assignment of Deed of Trust (DOT 1) recorded on June 17, 2015

5    (Assignment 2).  (Dkt. No. 27-2.)

6         Since these documents are public record documents that are not opposed to by

7    Plaintiffs, the Court GRANTS BANA, U.S. Bank and Caliber's requests for judicial

8    notice except that the Court DENIES BANA and U.S. Bank's RJN as to Exhibit 3 since

9    the attached Deed of Trust recorded on August 22, 2003 is not relevant to this case.

10   **C.   First Cause of Action - Violation of Regulation Z under TILA and**

11        **Regulation X under RESPA as to Defendants BANA and Caliber**

12        Plaintiffs allege that Defendants BANA and Caliber willfully and intentionally

13   failed to comply with the Requests for Information ("RFI") provisions of Regulation

14   Z of TILA and Regulation X of RESPA.  (Dkt. No. 25, SAC ¶ 96.)

15        As to purported violations of Regulation Z, the SAC alleges summary violations

16   of Regulation Z.  In response to the Court's prior order on the motions to dismiss,

17   Plaintiffs added paragraph 93 to provide more facts as to the Regulation Z claims.

18   Paragraph 93 states that BANA and Caliber violated sections of Regulation Z "by

19   failing to disclose the total amount of funds held in suspense as required by §

20   1026.41(d)(3); and failure to provide accurate statements reflecting the total

21   outstanding balance due under the loan (DOT 1) that would be required to pay the

22   obligation in full as of a specified date as required by §§ 1026.36(c)(3), 1026.41(a)(1)."

23   (Dkt. No. 25, SAC ¶ 93.)

24        A review of the SAC reveals that the Regulation Z claims appear to be based on

25   RFI 1, 3 and 4 which were directed to Caliber, not BANA.  (Dkt. No. 25, SAC ¶¶ 112,

26   116, 118.)  However, none of these three requests for information seek the information

27   identified in paragraph 93 concerning the past payment history and the total amount of

28   funds in suspense under 12 C.F.R.  § 1026.41(d)(3), and the request for a statement

reflecting the total outstanding balance due under the DOT 1 to pay the obligation in full as required pursuant to 12 C.F.R. § 1026.36(c)(3).  (Dkt. No. 25, SAC ¶¶ 78, 84, 118.[5])   Therefore, the Regulation Z claims are not supported by factual allegations.

Plaintiffs have failed to correct the deficiencies from the FAC, and the Court GRANTS Defendants' motions to dismiss the allegations concerning Regulation Z WITH PREJUDICE.  See Evans v. Nationstar Mortgage, LLC, No. 15cv1213 JAM GGH PS, 2015 WL 6756255, at *6 (E.D. Cal. Nov. 5, 2015) (granting motion to dismiss TILA because mere reference to TILA is not sufficient to state a claim but Plaintiff must explain which allegations support a violation).

Next, as to the alleged Regulation X violation, RESPA requires servicers of federally related mortgage loans to comply with certain disclosure requirements when it receives a qualified written request ("QWR").  12 U.S.C. § 2605.  A qualified written request is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  A servicer is required to respond to QWRs by a borrower only to the extent it seeks "information relating to the servicing of [the] loan."  12 U.S.C. § 2605(e)(1)(A).  Servicing is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." 12 U.S.C. § 2605(i)(3).

On January 10, 2014, the Mortgage Servicing Rules under the Real Estate Settlement Procedures Act, amended Regulation X of RESPA pursuant to the Dodd-

---

[5] While Plaintiffs allege a fourth RFI was sent to Caliber in December 2015, the SAC does not state what information that letter sought. (Dkt. No. 25, SAC ¶ 118.)

Frank Wall Street Reform and Consumer Protection Act of 2010[6], which is codified at 12 C.F.R. § 1024. <u>Evans</u>, 2015 WL 6756255, at *7. One of the amendments increases a loan servicer's duty to respond to qualified written requests. <u>Id.</u> If a mortgage loan servicer receives a request for information ("RFI") from a borrower, the servicer must provide a written response acknowledging receipt within five days. 12 U.S.C. § 2605(e)(1); 12 C.F.R. § 1024.36(c). The loan servicer must then respond to the inquiry not later than thirty days. 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.36(d). However, a request for the identity of and address or other relevant contact information for the owner or assignee of mortgage loan requires a response within 10 days. 12 C.F.R. § 1024.36(d)(2)(A); 12 U.S.C. § 2605(k)(1)(D).

Servicing, as defined under RESPA, "does not include the transactions and circumstances surrounding a loan's origination - facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." <u>Medrano v. Flagstar Bank, FSB</u>, 704 F. 3d 661, 666-67 (9th Cir. 2012). In <u>Medrano</u>, the Ninth Circuit upheld the dismissal of the RESPA claim for failing to properly request servicing information where the letters from the borrowers to servicer challenged terms of the loan and mortgage documents, and the failure of loan documents to "accurately reflect the proper payment schedule represented by the loan broker". <u>Id.</u> at 667. Under these facts, the court found no duty to respond to the request. <u>Id.</u> Therefore, requests for documents and information "relating to the original loan transaction and its subsequent history" do not qualify as QWRs. <u>Junod v. Dream House Mortg. Co.</u>, No. CV 11-7035-ODW(VBKx), 2012 WL 94355, at *4 (C.D. Cal. Jan. 5, 2012); <u>see also</u> <u>Consumer Solutions REO, LLC v.</u>

---

[6]"Congress gave the Department of Housing and Urban Development ("HUD") authority to regulate under RESPA, and HUD promulgated the corresponding regulations known as Regulation X. The Dodd–Frank Wall Street Reform and Consumer Protection Act transferred the regulatory authority of RESPA from HUD to the Consumer Financial Protection Bureau ("CFPB"), and CFPB later republished Regulation X without material changes." <u>Edwards v. First American Corp.</u>, 798 F.3d 1172, 1179 (9th Cir. 2015) (concerning anti-kickback provision of RESPA).

<u>Hillery</u>, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) (dismissing plaintiff's RESPA claim with prejudice after observing that the requirement "[t]hat a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan."). In addition, requests relating to loan modification are not related to "servicing" of the loan. <u>Smallwood v. Bank of America, N.A.</u>, Case No. 15cv336, 2015 WL 7736876, at *6 (S.D. Ohio, Dec. 1, 2015) (citing "<u>Mbakpuo v. Civil Wells Fargo Bank, N.A.</u>, No. 13-2213, 2015 WL 4485504, at *8 (D. Md. July 21, 2015) (request for a loan modification did not relate to servicing of a loan); <u>Mayer v. EMC Morg. Corp.</u>, No 2:11-cv-147, 2014 WL 1607443, at *5-6 (N.D. Ind. April 22, 2014) (same); <u>Van Egmond v. Wells Fargo Home Mortg.</u>, No. 12-0112, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) (RESPA only obligates loan services to respond to borrowers' requests for information relating to servicing of their loans, which does not include loan modification information)"); <u>Mobine v. OneWest Bank, FSB</u>, 11cv2550-IEG(BGS), 2012 WL 1520116, at *2 (S.D. Cal. Apr. 27, 2012) (same).

Once a servicer receives a proper QWR, it must make corrections in the borrower's account, or conduct an investigation, provide the borrower with a written explanation and provide the contact information of someone who can assist the borrower. 12 U.S.C. §§ 2605(e)(2)(A)-(C).

**1.    BANA**

    **a.    First RFI**

Around February 16, 2015, Plaintiffs mailed their first RFI to BANA at its designated address by certified mail with the subject matter, "Request for Information" and titled "Re: REQUEST FOR INFORMATION UNDER REGULATION X 12 C.F.R. § 1024.36 AND REGULATION Z UNDER 12 C.F.R. § 1026.36 et. seq." (Id. ¶ 68.) The RFI requested "section of the Pooling and Service Agreement (PSA) between [BANA] and the owner of the subject loan, including the mortgage-loan schedule; sections addressing loss mitigation requirements and rules; as well as section

that restrict Defendant in negotiating, offering, processing or approving loss mitigation options." (Id. ¶ 69.)  BANA timely acknowledged the first RFI but failed to provide any response. (Id. ¶ 70.) Later, the SAC also alleges, as to RFI 1, that BANA "failed to provided (sic) the requested information by the statutory deadline of April 3, 2015." (Id. ¶ 105.)

In its motion, BANA argues that Plaintiffs have failed to cure the deficiencies that the Court found in its prior order on its motion to dismiss.  Since they failed to amend the SAC concerning RFI 1,  BANA again argues that the documents sought are not proper QWRs that are subject to the disclosure requirements under 12 C.F.R. § 1024.36 and Plaintiffs failed to provide facts explaining how BANA failed to respond to the RFI.  In response, Plaintiffs generally argue they properly alleged violations of Regulation X and that the Defendants' motion primarily cite to cases predating the January 2014 amendment of Regulation X in defining a QWR.

A request for information concerning specific sections of the Pooling and Service Agreement ("PSA") does not relate to "servicing" of the loan, and is not subject to the RESPA requirements.  See Junod, 2012 WL 94355, at *3 (information about the PSA does not constitute a "servicing" request); see also Consumer Solutions REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009).  While the SAC adds that the "PSA contains guidelines for the servicer of the loan regarding available loss mitigation options for borrowers; Plaintiffs were entitled to receive this information while under review for a permanent loan modification (1024.36 and 1024.41)", (Dkt. No. 25, SAC ¶ 69), it does not change the Court's conclusion that information related to a PSA does not relate to "servicing" and, thus, is not subject to RESPA's requirements to respond.  See id.

Plaintiffs' argument that the cases cited to by Defendants do not reflect the recent amendments made to the definition of a QWR is without merit.  While the 2014 amendment  increased a loan servicer's duty to respond to QWRs, it did not amend the definition of what constitutes a qualified written request.   See 12 U.S.C. §

2605(e)(1)(B) (eff. since Sept. 30, 1996).

In addition, even if the PSA was related to "servicing," the SAC fails to sufficiently allege why BANA's response was inadequate.  The SAC alleges that BANA failed to provide any response, (Dkt. No. 25, SAC ¶ 70), and then also, in contradiction, alleges that BANA failed to provide the requested information by the statutory deadline, implying that a response was made but was inadequate.  (Id. ¶ 105.) If Plaintiffs allege that BANA's response was inadequate, they must provide facts to provide BANA notice as to why its response was not complete.  See Norris v. Bayview Loan Serv., LLC, Case No. CV15-643-MWF(DTBx), 2016 WL 337381, at *5 (C.D. Cal. 2016) (catchall assertion that the defendant did not "provide accurate and complete responses" is insufficient to state claim under Rule 8); see also Saterbak v. Nat'l Default Serv. Corp., Civil No. 15cv956-WQH-NLS, 2015 WL 5794560, at *19 (S.D. Cal. 2015) (allegations not sufficient where Plaintiffs allege that information provided by servicer was "inadequate and incorrect," without providing facts to support the conclusion).   A general statement that BANA failed to provide the requested information does not state a claim for violation of Regulation X.  Thus, because Plaintiffs failed to correct the deficiencies in the FAC, the Court GRANTS BANA's motion to dismiss the Regulation X violations as to the first RFI WITH PREJUDICE.

### b.   Second RFI

In the SAC, Plaintiffs have not amended the allegations concerning RFI 2.  The SAC alleges that around February 16, 2015, Plaintiffs mailed a second RFI to BANA which was received on February 19, 2015.  (Dkt. No. 25, SAC ¶ 71.)  The RFI requested the full name and address of the entity that is the owner or assignee for the loan as well as other information.  (Id. ¶ 72.)  Specifically, the RFI requested,

> The full name and address of the entity that is the owner or assignee for this loan; If the investor is Fannie Mae or Freddie Mac, the mortgage loan is subject to recourse or an indemnification agreement; The full name and address of the Investor; The full name and address of the master servicer for the loan; The full name and address of the current servicer for the loan; a copy of the mortgage, note, allonge, all endorsements and assignments; current property value, a copy of the broker's price opinion, automated valuation, appraisal or any other

1
2
    document relied upon to determine said value; the date and amount of the last payment received; the amount required to bring the loan current; the last monthly periodic statement (mortgage statement).

3
4
(Id.)  BANA timely acknowledged receipt of RFI 2.  (Id. ¶ 107.)  BANA also timely

5
responded but only provided two reinstatement quotes, which contained inconsistent

6
or unsubstantiated fees and charges.  (Id. ¶ 73.)  Defendant did not provide any

7
information regarding the owner of the loan, copy of any

8
allonges/endorsements/assignment of the Note, the investor information of the loan or

9
any of the loss mitigation information requested.  (Id.)

10
    Despite the Court's prior ruling that information related to the owner of the loan

11
is a proper subject matter in a QWR, BANA argues that overall the information sought

12
in RFI 2 is overbroad and generally unrelated to the servicing of the loan; therefore RFI

13
2 did not quality as a valid QWR and cites to Croskrey v. Ocwen Loan Serv. LLC, No.

14
SA CV 14-1318-DOC(DFMx), 2016 WL 3135643, at *11 (C.D. Cal. June 2, 2016)

15
(granting summary judgment in favor of the defendant holding that given the breadth

16
of plaintiffs' purported QWR, while some requests touch on servicing practices, it

17
appears that the plaintiff primarily sought information concerning the validity of the

18
debt and disputing the identity of the owners of the plaintiff's note which do not give

19
rise to a duty to respond under RESPA).  In response, Plaintiffs provide general

20
arguments that BANA failed to comply with Regulation X without addressing BANA's

21
arguments.

22
    In the Court's prior order, it held that a borrower's request for contact

23
information of the owner or assignee of the loan falls under RESPA and Regulation X.

24
(Dkt. No. 23 at 13-14[7].)  BANA's citation to Croskrey does not alter the Court's ruling.

25
Previously, the Court stated, "Plaintiffs seek numerous documents that pertain to the

26
servicing of her loan such as the name and address of the owner or assignee of the loan,

27
the full name and address of the master servicer for the loan, the full name and address

28

---

[7]The pages numbers are based on the CM/ECF pagination.

[16cv513-GPC(MDD)]

of the current servicer for the loan, the date and amount of the last payment received, the amount required to bring the loan current and the last mortgage statement." (Dkt. No. 23 at 14.)

Also, in its prior Order, the Court noted "other documents Plaintiffs seek, such as the investor information, an indemnification agreement, a copy of the mortgage, note, allonge, all endorsement and assignments, current property value, copy of the broker's price opinion, automated valuation, and appraisal, do not relate to servicing but to the loan origination" and are not related to "servicing" and do not state a claim under 12 C.F.R. § 1024.36. (Id.)   In Croskrey, the district court noted that the primary information sought in the QWR was related to the validity of the loan while information related to servicing was tangentially related. Croskrey, 2016 WL 3135643, at *11.   Here, the Court cannot conclude that the primary information sought by Plaintiffs is only tangentially related to servicing.   Therefore, Court's ruling remains the same with its prior Order as to both classes of requested documents.   Accordingly, the Court GRANTS in part and DENIES in part BANA's motion to dismiss the Regulation X violations as to the second RFI.

### c.   Third RFI

Around April 17, 2015, Plaintiff mailed a third RFI, by certified mail, which was received by BANA on April 22, 2015.   (Dkt. No. 25, SAC ¶ 74.)   It sought "further information regarding the LSF9 trust, particularly, available loss mitigation options available, the criteria for determination of eligibility for such options, and processes for applying for the options as well as a copy of a borrower solicitation package for loss mitigation." (Id. ¶ 75.)   According to Plaintiffs, BANA failed to acknowledge receipt within 5 business days and failed to completely and accurately respond to the requested information in the RFI.   (Id. ¶ 76.)   BANA acknowledged receipt of RFI 3 a day after the statutory deadline of April 29, 2015 but did not provide the requested information.   (Id. ¶ 109.)   In addition, it is alleged that BANA failed to provide a complete response to Plaintiffs' "request to provide any and all loss mitigation options

[16cv513-GPC(MDD)]

available and a timeline for the alternative process in violation of 12 C.F.R. § 1024.36(d)(2)(i)(B)."  (Id. ¶ 76.)  Specifically, the SAC adds that BANA failed to provide Plaintiffs with "any loss mitigation options, the criteria for determination of eligibility for such options, and processes for applying for the options as well as a copy of a borrower solicitation package for loss mitigation, also known as a Request for Mortgage Assistance application ("RMA")."  (Id.)

BANA argues that Plaintiffs have failed to amend the allegations that the Court found insufficient in the prior order on motions to dismiss.  The Court agrees.  As previously stated by the Court, the information sought in the third RFI was not subject to 12 C.F.R. § 1024.36 because it only sought information related to modification of the loan which is not related to "servicing" and Plaintiffs' failed to state a claim on the third RFI.  (Dkt. No. 23 at 15.)  Plaintiffs have failed to correct the stated deficiency.

In addition, as the Court previously concluded, the FAC failed to sufficiently allege why BANA's response was not adequate under the law.  See Norris, 2016 WL 337381, at *5 (catchall assertion that the defendant did not "provide accurate and complete responses" is insufficient to state claim under Rule 8).  Again, Plaintiffs failed to amend the complaint to explain why BANA's response was not sufficient.  Accordingly, the Court GRANTS BANA's motion to dismiss the Regulation X violations on the third RFI WITH PREJUDICE.

### d.    Notice of Error

Around December 9, 2015, Plaintiffs sent BANA a Notice of Error ("NOE") pursuant to 12 C.F.R. § 1024.35 addressing the conflicting figures identified in the life of the loan history which was provided by Caliber, its successor, in response to their RFIs.  (Dkt. No. 25, SAC ¶¶ 90, 123.)  BANA failed to acknowledge or respond to the NOE.  (Id. ¶ 91.)

BANA argues that Plaintiffs have failed to either attach a copy of the December 9, 2015 NOE letter to the SAC or provide specific facts as to the contents of the alleged error.  Plaintiffs oppose.

[16cv513-GPC(MDD)]

A Notice of Error is:

> any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. . . . A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

12 C.F.R. § 1024.35(a). A servicer must provide the borrower a written response acknowledging receipt of the notice of error within five days of receiving the NOE. 12 C.F.R. § 1024.35(d). Servicers are required to respond to the NOE by either correcting the error and providing the borrower with written notification of the correction, effective date of the correction, and contact information or conduct a reasonable investigation and provide the borrower with a written notification about the investigation. Id. § 1024.35(e)(1). The servicer must comply with these requirements no later than seven days after the servicer receives the NOE. 12 C.F.R. § 1024.35(e)(3)(i)(A).

For a violation of 12 C.F.R. § 1024.35(e), Plaintiff must allege facts of when the letter was sent, to whom it was directed, why it was sent, and the contents of the letter so that it may determine if the letter qualifies as a NOE. See Kilgore v. Ocwen Loan Serv., LLC, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015) (conclusory allegation that a plaintiff submitted an NOE does not state a plausible claim under RESPA); see also Blanchard v Northway Bank, No. 13cv119-JL, 2013 WL 1775460, at *2 (D.N.H. Apr. 25, 2013) (failing to attached the alleged QWR or provide factual allegations describing its contents failed to state a RESPA claim).

In the Court's prior order, the Court granted BANA's motion to dismiss the Regulation X violations as to the NOE because Plaintiffs failed to assert specific facts to support their conclusory allegation. (Dkt. No. 23 at 16.) Plaintiffs' allegations remain the same and they have not corrected the deficiency in their pleadings as pointed out by the Court. Therefore, the Court GRANTS BANA's motion to dismiss the Regulation X violations as to the NOE WITH PREJUDICE.

2.     **Caliber**

Caliber argues that Plaintiffs fail to state a claim under 12 C.F.R. § 1024.36 of RESPA as to RFI 1 and 2.[8]  Plaintiffs argue that as to the three RFI's, Caliber failed to timely acknowledge receipt pursuant to 12 C.F.R. § 1024.36(c) and failed to respond to the requests by either producing the requested information or sending a written explaining of why it was not required to provide the requested information pursuant to 12 C.F.R. § 1024.36(d).

a.     **First RFI**

The SAC alleges that around July 16, 2015, Plaintiffs sent their first RFI to Caliber whose subject matter was "Request for Information" and titled "Re: REQUEST FOR INFORMATION UNDER REGULATION X 12 C.F.R. § 1024.36 AND REGULATION Z UNDER 12 C.F.R. § 1026.36 et. seq" to Defendant's designated address. (Id. ¶ 77.) In that request, they specifically sought "a copy of the promissory note or other evidence of indebtedness, deed of trust or mortgage; any assignment of the mortgage or deed to trust to demonstrate right to foreclose; and payment history since the borrower was last less than 60 days past due." (Id. ¶ 78.) Caliber allegedly failed to timely acknowledge the RFI within five business days but provided Plaintiffs with a recorded copy of DOT 1, Assignment 2, and Plaintiffs' payment history. (Id.) According to Plaintiffs, these responses were not a complete response to the information requested. (Id.)

Caliber solely moves to dismiss on whether it complied with the first RFI.[9] The allegations plead in the FAC are the same as in the SAC with no amendments addressing the reason why the Court granted Caliber's motion to dismiss. In the prior

---

[8]Caliber does not move to dismiss the third RFI since the Court previously denied its motion to dismiss on this claim.  Therefore, that claim remains. While the SAC also alleges a fourth RFI as to Caliber, it does not move to dismiss the fourth RFI. (Dkt. No. 25, SAC ¶ 118.)

[9]Caliber does not move to dismiss the allegation that it failed to timely acknowledge the first RFI within five business days. (Dkt. No. 25, SAC ¶ 79.) In the Court's prior order, it denied Caliber's motion to dismiss for violation of 12 U.S.C. § 1024.36(c).

order, the Court noted that it appeared that Caliber provided all the information sought by Plaintiffs in the first RFI. While Plaintiff allege, in the SAC, that the responses were not a complete response, they have not amended the complaint to allege the reasons why the responses were not complete. See Norris, 2016 WL 337381 at 5 (assertion that the defendant did not "provide accurate and complete responses' is insufficient to state a claim). Therefore, for the same reasons, the Court GRANTS Caliber's motion to dismiss the first RFI as to whether it provided a complete response to Plaintiffs' RFI WITH PREJUDICE.

### b.   Second RFI

Around July 16, 2015, Plaintiffs sent a second RFI to Caliber which specifically requested the full name and address of the entity that is the owner or assignee for the loan. (Id. ¶¶ 80, 114.) They also sought the following:

> If the investor is Fannie Mae or Freddie Mac, the mortgage loan is subject to recourse or an indemnification agreement; The full name and address of the Investor for the borrower's loan; The full name and address of the master servicer for the borrower's loan; The full name and address of the current servicer for the borrower's loan; and the current property value, a copy of the broker's price opinion, automated valuation, appraisal or any other document relied upon to determine said value.

(Id. ¶ 81.) According to the SAC, Caliber failed to timely acknowledge the second RFI within five business days and failed to provide timely and complete responses to the requests. (Id. ¶ 82.) Specifically, Caliber acknowledged receipt two days after the statutory deadline of July 28, 2015 and failed to provide the requested responses by the statutory deadlines. (Id. ¶ 115.) The documents Plaintiffs received were not responsive to their requests. (Id.)

Caliber argues that the allegations concerning the second RFI remain unchanged despite the Court's dismissal of the claims on the prior motion to dismiss and again argues that Plaintiffs' allegations are vague and conclusory and do not specify what responses Caliber provided and why they were not complete; therefore, it cannot

address the nature of the deficiencies.[10]  Plaintiffs oppose arguing they alleged the specific information sought in the RFI and that this information was not provided.

A general allegation that Caliber failed to provide complete responses to the request does not state a claim under Rule 8.  See Norris, 2016 WL 337381, at *5; Saterbak, 2015 WL 5794560, at *19.  However, in this case, Plaintiffs added paragraph 82 to the SAC which alleges that Defendant failed to timely acknowledge RFI 1.2 within five business days and failed to timely respond to the request for the identity, address and other relevant contact information about the owner or assignee of the mortgage loan within 10 days as required by 12 C.F.R. § 1024.36(d)(2)(A) and 12 U.S.C. § 2605(k)(1)(D).  (Dkt. No. 25, SAC ¶ 82.)  Plaintiffs also allege that this specific information was not provided.[11]  (Id.)  The allegation concerning the identity and contact information about the owner or assignee of the loan states a claim under RESPA.  See 12 C.F.R. § 1024.36(d)(2)(A) ("A servicer must comply with the requirements of paragraph (d)(1) of this section:(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan"); 12 U.S.C. § 2605(k)(1)(D) (A servicer of a federally related mortgage shall not –. . . (D) fail to respond within 10

---

[10]In a footnote, Caliber contends that 12 C.F.R. § 1024.36 does not require a servicer to respond to any request that is the same as previously requested and complied with. Caliber argues that it previously provided information about the owner and investor when it sent Plaintiffs copies of the assignment of the deed of trust. However, the Court notes that even if Caliber is exempt from providing duplicative information, the regulations require the servicer to notify the borrower of this determination in writing no later than five days after making such determination. See 12 C.F.R. § 1024.36(f). Moreover, at this stage of the proceeding, the Court declines to consider, without proper evidence, that the response to RFI 2 was duplicative of a response to a prior RFI.

[11]In contrast, the SAC also alleges that as to the second RFI sent to Caliber, Plaintiffs allege that the documents they received were not responsive to Plaintiffs' requests. (Dkt. No. 25, SAC ¶ 115.) While this allegation is not sufficient to state a claim under Regulation X of RESPA, the allegation in paragraph 82 stating that Plaintiffs were not provided with the information about the owner of the loan is sufficient to state a claim.

1  business days to a request from a borrower to provide the identity, address, and other

2  relevant contact information about the owner or assignee of the loan").

3      As to the remaining information sought in RFI 2 in paragraph 81, they are similar

4  to RFI 2 sent to BANA.  Therefore, the same conclusions apply.  Information such as

5  the name and address of the owner or assignee of the loan, the full name and address

6  of the master servicer for the loan, the full name and address of the current servicer for

7  the loan pertain to servicing of the loan and state a claim under 12 C.F.R. § 1024.36.

8  Other documents such as the investor information, the current property value, a copy

9  of the broker's price opinion, automated valuation, or appraisal do not relate to

10 servicing but to loan origination and do not state a claim under 12 C.F.R. § 1024.36.

11     Therefore, the Court GRANTS in part and DENIES in part Caliber's motion to

12 dismiss the claim for violation of Regulation X for the second RFI.

13          **c.    Plaintiff Watson**

14     Caliber also argues that Charlotte C. Watson lacks standing to raise claim on the

15 first, second and third RFIs as alleged by her since she is not the borrower listed on

16 DOT 1 and the claims can only brought by Charlotte C. Watson, as Trustee.  (Dkt. No.

17 27-2, Caliber's RJN, Ex. A.)  Plaintiffs do not address this argument.

18     The Court notes that while DOT 1 lists "Charlotte C. Watson, Trustee of the

19 Charlotte C. Watson Trust Dated November 5, 2003" as the borrower, (Dkt. No. 27-2,

20 Caliber's RJN, Ex. A), Assignment 2 of DOT 1 lists the borrower as "Charlotte C.

21 Watson" only.  (Dkt. No. 27-2, Caliber's RJN, Ex. F.)  Since both names appear on the

22 documents at issue, the Court DENIES Caliber's motion to dismiss Plaintiff Charlotte

23 C. Watson for lack of standing.

24          **d.    Notice of Errors**

25     Around December 8, 2015, Plaintiffs sent two Notice of Errors ("NOE") to

26 Caliber pursuant to 12 C.F.R. § 1024.35 addressing Caliber's failure to timely

27 acknowledge receipt of the July 16, 2015 RFIs and failing to timely, completely and

28 accurately respond to the requested information.  (Dkt. No. 25, SAC ¶¶ 89, 121, 122.)

Specifically, Plaintiffs identified conflicting information appearing in the transaction history/payment history provided by BANA and Caliber from October 10, 2008 through June 30, 2015.  (Id. ¶ 89.)  The transaction history provided by Caliber contained certain charges and fees for property inspections that did not appear in the transaction history provided by BANA for the same time period. (Id.)  Caliber acknowledged Plaintiffs' NOEs but failed to address or correct the erroneous information identified in the NOEs.  (Id. ¶¶ 92, 126.)

Again, as it did in its prior motion to dismiss, Caliber merely argues that because Plaintiffs' claims under 12 C.F.R. § 1024.36 fail, then their reliant claims under 12 C.F.R. § 1024.35 also fail.  This argument is without merit as the Court previously concluded that Plaintiffs stated a claim under 12 C.F.R. § 1024.36.  Plaintiffs contend that while Caliber acknowledged receipt of the NOEs, no response was ever provided regarding the identified conflicting information in the payment history provided by BANA and Caliber so there is uncertainty as to the true principal balance of the loan.

Based on the allegations in the SAC, the Court concludes that Plaintiffs have sufficiently alleged a violation of 12 C.F.R. § 1024.35 as servicers are required to respond "to the NOE by either correcting the error and providing the borrower with written notification of the correction, effective date of the correction, and contact information or conduct a reasonable investigation and provide the borrower with a written notification about the investigation" within seven days after the servicer receives the NOE.   12 C.F.R. § 1024.35(e)(1); 12 C.F.R. § 1024.35(e)(3)(i)(A). Therefore, the Court DENIES Caliber's motion to dismiss the claim for violation of 12 C.F.R. § 1024.35 as to the two NOEs.

**D.   Fourth Cause of Action - Quiet Title as to U.S. Bank[12]**

An action to quiet title can be brought "to establish title against adverse claims to real or personal property or any interest therein."  Cal. Civ. Proc. Code § 760.020.

_____

[12]The quiet title claim is also alleged as to U.S. Bank Trust as Trustee for LSF9; however, that entity has not yet appeared in the case.

A "[c]laim" is defined as "a legal or equitable right, title, estate, lien, or interest in property or cloud upon title." Id. § 760.010(a).  To state a cause of action for quiet title, a plaintiff must allege the following in a verified complaint: (1) the property's legal description and its street address or common designation'; (2) Plaintiffs' title and the basis of the title; (3) the adverse claims to the title against which a determination is sought; (4) the date the determination is sought; and (5) a prayer for the determination of the plaintiffs' title against the adverse claims.  Cal. Civ. Proc. Code § 761.020.  In addition, a "plaintiff seeking to quiet title in the face of a foreclosure must allege tender or an offer of tender of the amount borrowed." Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 712 (N.D. Cal. 2009) (quoting Arnolds Management Corp. v. Eischen, 158 Cal. App. 3d 575, 578 (1984)).

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." Shimpones v. Stickney, 219 Cal. 637, 649 (1934); see also Aguilar v. Bocci, 39 Cal. App. 3d 475, 477 (1974) (trustor is unable to quiet title "without discharging his debt").  However, tender may not be required if it would be inequitable to do so.  Onofrio v. Rice, 55 Cal. App. 4th 413, 424 (1997) (If plaintiffs "attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt."); see also Dimock v. Emerald Props., 81 Cal. App. 4th 868, 876-78 (2000).

California courts have distinguished between a void and a voidable foreclosure sale to determine whether an allegation of tender is required.  See Dimock, 81 Cal. App. 4th at 877-88; see Ferguson v. Avelo Mortg., L.L.C., 195 Cal. App. 4th 1618 (2011); Ram v. OneWest Bank, FSD, 234 Cal. App. 4th 1, 18-19 (2015) (procedural irregularities in the sale notice and procedure are deemed voidable, not void).  "In the context of overcoming a voidable sale, the debtor must tender any amounts due under the deed of trust." Dimock, 81 Cal. App. 4th at 877.  However, no tender required if a foreclosure sale is void.  Id. at 878.

Court have declined to apply the tender rule where "plaintiff alleges that the

defendant lacks authority to foreclose on the property and, thus, that any foreclosure sale would be void rather than merely voidable." Rockridge Trust v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1158 (N.D. Cal. 2013) (citing Lester v. JP Morgan Chase Bank, 926 F. Supp. 2d 1081, 1095 (N.D. Cal. 2013) (no need to allege tender because borrower alleged that defendant did not have authority to foreclose on the property and thus any foreclosure sale would be void)). In an unpublished Ninth Circuit case, the court held that the "tender rule does not apply to a void, as opposed to a voidable, foreclosure sale." Martinez v. America's Wholesale Lender, 446 F. App'x 940, 943 (9th Cir. 2011) (citing Ferguson, 195 Cal. App. 4th at 592 and Dimock, 81 Cal. App. 4th at 878). In Martinez, the Ninth Circuit reversed the district court's grant of summary judgment in favor of the defendant on a quiet title claim. Id. The appellant alleged the purported trustee had no interest in the subject property and therefore lacked authorization to effect a nonjudicial foreclosure, and, if true, the foreclosure sale would be void under California law. Id.

In this case, Plaintiffs filed a verified second amended complaint. (Dkt. No. 25-1.) The SAC presents the legal description of the property and alleges that Plaintiffs seek to quiet title against U.S. Bank's claims as of the date of filing of the complaint. (Dkt. No. 25, SAC ¶¶ 3, 165.) Plaintiffs are fee owners of the subject property, are currently in possession of the Property and are entitled to possession of the property and are the titleholders of the subject property according to the Grant Deed. (Id. ¶ 166.) Defendant U.S. Bank claims an adverse interest to Plaintiffs in the subject property in the form of DOT 2. (Id. ¶¶ 168, 173.) Plaintiffs seek a determination of its fee simple title. (Id. ¶ 178.) Lastly, "Plaintiffs offer and are ready, willing and able to unconditionally tender their obligation." (Id. ¶ 172.)

In its motion to dismiss, U.S. Bank presents several arguments. First, it claims that Plaintiffs' assertion that DOT 2 is void because MERS was not the listed beneficiary when it was assigned to U.S. Bank is without merit because DOT 2 specifically lists MERS as the beneficiary and cites to Exhibit 3 of its RJN. However,

1    as noted by the Court above on U.S. Bank's RJN, Exhibit 3 does not include a DOT

2    recorded on June 1, 2005.  Therefore, U.S. Bank's argument is without merit.

3         Next, U.S. Bank alleges that the quiet title claim is nothing more than a

4    preemptive action to determine whether it may initiate nonjudicial foreclosure;

5    however, California courts do not allow such preemptive suits and Plaintiffs do not

6    have standing to assert a quiet title claim.[13]   Plaintiffs oppose.

7         In the Court's prior order, it declined to rule on the standing issue since Plaintiffs

8    was granted leave to amend, and directed the parties to address the development of the

9    law since the California Supreme Court's holding in <u>Yvanova v. New Century Mortg.</u>

10   <u>Corp.</u>, 62 Cal. 4th 919, 942-43 (2016) in a subsequent motion to dismiss.  However,

11   in the instant motions, neither party provided the Court with any guidance on the

12   standing issue post-<u>Yvanova</u> as to whether <u>Yvanova</u> applies to a pre-foreclosure

13   challenge of an alleged void assignment.

14        Prior to <u>Yvanova</u>, California appellate courts held that a borrower had no

15   standing to file a wrongful foreclosure case based on claims that the assignments of

16   note and deed of trust were void.  <u>Jenkins v. JP Morgan Chase Bank, N.A.</u>, 216 Cal.

17   App. 4th 497, 511 (2013); <u>Siliga v. Mort. Elec. Reg. Sys., Inc.</u>, 219 Cal. App. 4th 75

18   (2013); <u>Fontenot v. Wells Fargo Bank, N.A.</u>, 198 Cal. App. 4th 256 (2011), and

19   <u>Herrera v. Federal National Mort. Assn.</u>, 205 Cal. App. 4th 1495 (2012) (all

20   disapproved by <u>Yvanova v. New Century Mortgage Corp.</u>, 62 Cal. 4th 919 (2016)).

21        In <u>Yvanova</u>, the California Supreme Court held that a "home loan borrower has

22   standing to claim a nonjudicial foreclosure was wrongful because an assignment by

23   which the foreclosing party purportedly took a beneficial interest in the deed of trust

24   was not merely voidable but void, depriving the foreclosing party of any legitimate

25

26        [13]U.S. Bank also argues that to the extent the allegations relate to an assignment
     made in violation of a PSA (Pooling Servicing Agreement) such defects render the
27   assignment voidable under New York Law, and not void; and therefore Plaintiffs lack
     standing to challenge any defects in Assignment 3.  However, the SAC does not allege
28   that DOT 2 was subject to a PSA.  Therefore, this argument is without merit.

authority to order a trustee's sale." Yvanova, 62 Cal. 4th at 942-43. The court noted its holding is a narrow one limited to holding that "a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment." Id. at 924. "We do not hold or suggest that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed." Id. In addition, a plaintiff must allege facts showing that the assignment was void, and not merely voidable. Id.

Since Yvanona's ruling, one court of appeal held that the ruling Yvanova is expressly limited to the post-foreclosure context. Saterbak v. JPMorgan Chase Bank, N.A., 245 Cal. App. 4th 808, 815 (2016) (borrower lacked standing to challenge cancellation of assignment of deed of trust prior to a foreclosure and because the allegations render the assignment voidable, not void).

In 2014, the California Supreme Court granted review in Keshtgar v. U.S. Bank, N.A., – Cal. 4th –, 178 Cal. Rptr. 3d 320 (2014), a case involving a pre-foreclosure challenge based on alleged deficiencies in the assignment of the deed of trust, and Mendoza v. JPMorgan Chase Bank, 180 Cal. Rptr. 3d 1 (2014). But "[o]n April 27, 2016, the California Supreme Court remanded the Mendoza and Keshtgar cases and directed the courts of appeal to vacate and reconsider their decisions in light of Yvanova. See Mendoza v. JPMorgan Chase Bank, 368 P.3d 921 (Cal. 2016); Keshtgar v. U.S. Bank, N.A., 368 P.3d 921 (Cal. 2016).

On remand, the court of appeal in Keshtgar held that Yvanova applies only to wrongful foreclosure claims and not actions seeking to prevent a foreclosure. Keshtgar v. U.S. Bank, N.A., 2016 WL 4183750, at *1 (Cal. App. Aug. 8, 2016) (unpublished). The plaintiff in Keshtgar sought to "prevent the bank from initiating foreclosure proceedings because the bank had no authority to initiate foreclosure because an assignment to the bank was either void or did not take place." Id. at 1.

After considering the holding in <u>Yvanova</u>, the court of appeal affirmed the trial court's sustaining the bank's demurrer without leave to amend and held that whether the transfer was alleged to be void or never made, "there is no preforeclosure cause of action to challenge the authority of the person initiating foreclosure."  <u>Id.</u> at 3.

Unpublished courts of appeal decisions since the ruling in <u>Yvanova</u> have held that its holding does not apply to pre-foreclosure cases.  <u>See</u> <u>Watland v. Ocwen Loan Serv., LLC</u>, 2016 WL 1469610 (Ct. App. Apr. 13, 2016) (<u>Yvanova</u> only applies to those who suffered a nonjudicial foreclosure sale and held that plaintiff had no standing to challenge assignments while there was a pending notice of default and notice of trustee's sale); <u>Torres v. U.S. Bank Nat'l Ass'n</u>, 2016 WL 3571014 (Ct. App. June 23, 2016) (no standing, relying on <u>Yvanona</u> and <u>Saterbak</u>, where plaintiffs impermissibly challenged the assignment before any nonjudicial foreclosure had occurred); <u>Diller v. JP Morgan Chase Bank, N.A.</u>, 2016 WL 3640480 (Ct. App. June 30, 2016) (no standing where notice of default and notice of foreclosure sale were pending relying on <u>Yvanova</u> and <u>Saterbak</u> and the plaintiff did not allege facts that she was prejudiced for purposes of standing); <u>Tonini v. Recontrust Co., N.A.</u>,  2016 WL 3884999 (Ct. App. July 14, 2016) (no standing in case with notice of default with a pending foreclosure sale because <u>Yvanonva</u> does not apply to pre-foreclosure challenges); <u>Salinas v. Bank of New York Mellon</u>, 2016 WL 4978432 (Ct. App. Sept. 19, 2016) (no standing where nonjudicial foreclosure proceedings were instituted but had not yet been sold under <u>Yvanova</u>.); <u>see e.g.</u>, <u>Cooper v. Countrywide Home Loans</u>, 2016 WL 6301206 (Ct. App. Oct. 27, 2016) (no standing to proceed with preforeclosure suit because assignment of deed of trust was voidable, not void under <u>Yvanova</u>.)  In following the California courts of appeal, a district court in the Eastern District of California held that <u>Yvanova</u> does not apply to a suit seeking to avoid foreclosure. <u>Martin v. Litton Loan Serv. LP</u>, No. 12cv970-MCE-EFT PS, 2016 WL 4943832, at *5 (E.D. Cal. Sept. 15, 2016).

On the other hand, since the ruling in <u>Yvanova</u>, district courts in the Northern

[16cv513-GPC(MDD)]

District of California have predicted that the California Supreme Court would likely "limit a bar on preforeclosure suits only to plaintiffs who lack a specific factual basis for asserting that the foreclosing party lacks authority to do so." Reed v. Wilmington Trust, N.A., No. 16cv1933-JSW, 2016 WL 3124611, at *4 (N.D. Cal. June 3, 2016) (citing Powell v. Wells Fargo Home Mort., No. 14-cv-04248-MEJ, 2016 WL 1718189, at *8 (N.D. Cal. Apr. 29, 2016)); Lundy v. Selene Finance, L.P., No. 15-cv-05676-JST, 2016 WL 1059423, at *13 (N.D. Cal. Mar. 17, 2016)). In Reed, the district court rejected the argument that a plaintiff does not have standing to challenge alleged defects in the assignment simply because the foreclosure had not yet occurred. Id. Instead, the court should look at whether the plaintiff has alleged a specific factual basis of his or her claim that the assignment is void such that it lacked the authority to foreclose. Id.

Here, the SAC alleges that the loan secured by DOT 2 was removed from U.S. Bank in 2011 following a Chapter 11 Bankruptcy in the Southern District of New York and pursuant to an asset purchase agreement, Lone Star U.S. Acquisitions, LLC purchased certain assets which were secured by DOT 2; therefore, Assignment 3 purporting to assign the beneficial interest under DOT 2 from MERS to U.S. Bank is void since neither of them were beneficiaries of DOT 2 at the time of assignment. (Dkt. No. 25, SAC ¶¶ 48, 49.) The SAC presents no allegations that any nonjudicial foreclosure proceedings were instituted as to DOT 2. Any notice of default and notice of trustee's sale concerned solely DOT 1. (See Dkt. No. 27-2, Caliber's RJN, Exs. B & D.)

Based on a careful review of the Yvanova, post-Yvanova court of appeal cases and post-Yvanova district court cases, in order to establish standing to challenge an assignment in either a pre-foreclosure or post-foreclosure case, a plaintiff must assert harm that produces "an invasion of his or her legally protected interest", prejudice or injury. In Yvanova, the California Supreme Court distinguished between prejudice as an element of a wrongful foreclosure claim where the defendant argued that plaintiff

must allege and prove that the true beneficiary under the deed of trust would have refrained from foreclosing on the plaintiff's property, and prejudice as it relates to standing. Yvanova, 62 Cal. 4th at 937-38. "A foreclosed-upon borrower clearly meets the general standard for standing to sue by showing an invasion of his or her legally protected interest." Id. at 937. The harm is the foreclosure which can be traced directly to the foreclosing entity's "exercise of the authority purportedly delegated by the assignment." Id. (citation omitted). Moreover, the court in Yvanova explained its holding was a narrow one and did "not hold or suggest that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed." Yvanova, 62 Cal. 4th at 924. This language suggests that even if the ruling in Yvanova applied to pre-foreclosure cases, it would only apply to cases involving a "threatened nonjudicial foreclosure."

In Diller, the court of appeal noted that the plaintiff did not allege she had been prejudiced for purposes of standing because Plaintiff did not dispute she was in default, her property had not been sold and she did not allege that any pre-foreclosure efforts caused her harm. Diller, 2016 WL 3640480, at 3. In Torres, the plaintiffs were current on their payments, resided in their home and no foreclosure proceedings were pending against them but they filed a complaint seeking to cancel the note, deed of trust and other documents. Torres, 2016 WL 3571014 at 9. The court of appeal explained that "the Torreses impermissibly challenged the assignment before any nonjudicial foreclosure occurred. Indeed, their complaint acknowledged both notices of default Defendants recorded against the Property were rescinded, no foreclosure had occurred, and no foreclosure proceedings were pending against the Property. The Torreses therefore currently lack standing to challenge the assignment regardless of whether the defect they alleged rendered the assignment void or voidable." Id.

In Lundy, in holding that Yvanova applies to pre-foreclosure cases, the district court conducted an analysis on prejudice and harm in which the court identified the harm as the "initiation of foreclosure proceedings" and prejudice to a plaintiff who is

[16cv513-GPC(MDD)]

at "imminent risk" of losing her home.  Lundy, 2016 WL 1059423 at 11; see Powell, 2016 WL 1718189 at 6-7 (quoting Lundy's analysis).  In line with these cases, standing to challenge an assignment, whether pre or post foreclosure, is not established where there has been no initiation of non-judicial foreclosure proceedings.

Here, Plaintiffs suggestively allege they are in default, (Dkt. No. 25, SAC ¶ 50), and it appears that they still reside in their home and no foreclosure proceedings have been initiated as to DOT 2.  There are no allegations to the contrary.  This is a situation where Plaintiffs "have impermissibly challenged the assignment before any nonjudicial foreclosure occurred", see Torres, 2016 WL 3571014 at 9, and as a result, do not allege any harm, injury or prejudice "sufficiently concrete and personal to provide standing", Yvanova, 62 Cal. 4th at 937, to challenge DOT 2.  Thus, the Court GRANTS U.S. Bank's motion to dismiss the quiet title cause of action for lack of standing.  See Salinas, 2016 WL 4978432 at 2 (applying analysis of Yvanova to "foreclosure-related claims" such as cancellation of instruments, slander of title, UCL and declaratory relief).

Lastly, U.S. Bank argues that Plaintiffs cannot pursue this claim because they failed to tender the outstanding amount due under the Loan.  Plaintiffs argue that they are only required to allege a credible offer of tender, not actual tender and that the tender rule is not absolute and is not required when it would be inequitable to do so.

The SAC alleges that Assignment 3 of DOT 2 from MERS to U.S. Bank was void because MERS had no authority to transfer the interest due to a bankruptcy proceeding. Therefore, if a foreclosure were to proceed based upon DOT 2, the lack of authority would render the transferred interest void.  As discussed above, since Plaintiffs are challenging the validity of the debt, Plaintiffs are not required to allege tender.  See Onofrio, 55 Cal. App. 4th at 424; Dimock, 81 Cal. App. 4th at 876-78.

Based on the reasoning above, the Court GRANTS U.S. Bank's motion to dismiss the quiet title cause of action WITH PREJUDICE.

///

**E.     Fifth Cause of Action - Cancellation of Instrument as to all Defendants**

California Civil Code section 3412 provides for the cancellation of a written instrument when there is "reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable." Cal. Civil Code § 3412. "To plead a cause of action for cancellation of instrument, plaintiff must show that he will be injured or prejudiced if the instrument is not cancelled, and that such instrument is void or voidable." Zendejas v. GMAC Wholesale Mortg. Corp., No. 10cv184 OWW, GSA, 2010 WL 2629899, at *7 (E.D. Cal. June 29, 2010) (granting motion to dismiss because plaintiffs failed to assert any valid reason, except that the defendants did not have the right to foreclose, why the instruments are void or voidable). A plaintiff must provide facts, "not mere conclusions, showing the apparent validity of the instrument designated, and point out the reason for asserting that it is actually invalid." Ephraim v. Metropolitan Trust Co. of California, 28 Cal. 2d 824, 833 (1946).

Plaintiffs seek cancellation of the following instruments: DOT 1; DOT 2[14]; the Substitution of Trustee recorded around February 12, 2014; the Assignment of DOT 1 ("Assignment 2") recorded around June 17, 2015; the Assignment of DOT 2 ("Assignment 3")[15] recorded around July 24, 2014; and the Notice of Default and Notice of Trustee's Sale recorded in reference to DOT 1 and DOT 2, because they are void. (Dkt. No. 25, SAC ¶ 181.) The instruments are void because they are inaccurate and executed without legal authority by Defendants. (Id. ¶ 183.) Plaintiffs allege that if the instruments are not cancelled, they will be injured because these instruments are

---

[14]While Plaintiffs allege cancellation of DOT 1 and DOT 2, they do not provide any arguments why these documents should be cancelled.

[15]The Court notes that while Plaintiffs allege cancellation of instrument on Assignment 1, (Dkt. No. 25, SAC ¶ 181), it appears they seek cancellation of instrument on Assignments 2 and 3 only as they only reference the dates recorded of these two assignments. (Id.) In the prior order on motions to dismiss, the Court directed Plaintiffs to clarify which Assignment they challenge; however, they failed to do so. Therefore, the Court assumes Plaintiffs are alleging cancellation of instrument as to Assignments 2 and 3.

1  being used to substantiate a non-judicial foreclosure and if not cancelled, they will lose
2  their home.  (Id. ¶ 184.)

3  **1.    BANA, U.S. Bank and Caliber**

4  All Defendants argue that since Plaintiffs have not amended this claim, it should
5  be dismissed because the SAC only provides a conclusory allegation that the
6  instruments are void because they are inaccurate and executed without legal authority.
7  Plaintiffs seek cancellation of instruments as to the Assignment 2, Substitution of MTC
8  as the purported Trustee of DOT 1, Assignment 3, notice of default and notice of
9  trustee's sale.[16]

10  **a.    Substitution of Trustee, Notice of Default and Notice of**
11  **Trustee's Sale**

12  California Civil Code section 2924 provides that, "No entity shall record or
13  cause a notice of default to be recorded or otherwise initiate the foreclosure process
14  unless it is the holder of the beneficial interest under the mortgage or deed of trust, the
15  original trustee or the substituted trustee under the deed of trust, or the designated agent
16  of the holder of the beneficial interest." Cal. Civil Code § 2924(a)(6).  California Code
17  section 2934a(a)(1) provides that a trustee may be substituted by recording a
18  substitution of trustee in the county where the property is located.  Cal. Civil Code §
19  2934a(a)(1); Dimock, 81 Cal. App. 4th at 871 ("[b]y statute the Legislature has
20  permitted the beneficiary of a deed of trust to substitute, at any time, a new trustee for
21  the existing trustee.").  The substitution is made simply by recording a document
22  evidencing the substitution, and once it has been recorded, the new trustee succeeds to
23  all the "powers, duties, authority and title granted and delegated to the trustee named
24  in the deed of trust."  Dimock, 81 Cal. App. 4th at 871 (quoting Cal. Civil Code §

25
26  [16]Plaintiffs also argue that DOT 1 is not valid because the SAC shows that the
27  note relating to DOT 1, serviced by Caliber, was never transferred or assigned to U.S.
Bank; therefore, DOT 1 securing the debt does not secure any debt and Caliber and
MTC do not have the right to initiate non-judicial foreclosure proceedings.  (Dkt. No.
28  29 at 13; Dkt. No. 30 at 12.)  However, the SAC asserts no allegations concerning the
transfer of the note.  Therefore, this argument is without merit.

[16cv513-GPC(MDD)]

2934a(a)(4)).

Here, the SAC alleges that on February 16, 2012, Assignment 1 was recorded purporting to assign the beneficial interest of DOT 1 to BANA. (Dkt. No. 25, SAC ¶ 45.) On February 12, 2014, two years later, a Substitution of Trustee was recorded purporting to substitute MTC as the Trustee of DOT 1. (Id. ¶ 44.) The SAC complains that the Substitution of Trustee is void because Assignment 1 "was recorded 4 days after substitution of trustee" was recorded. (Id. ¶ 44.) Plaintiffs' assertions are incorrect as they have mistakenly read that Assignment 1 and the Substitution of Trustee were recorded in the same year. Based on this erroneous fact, Plaintiffs conclude that BANA had no authority to record the Substitution of Trustee. (Id.) In fact, Assignment 1 was recorded two years before the Substitution of Trustee. (See Dkt. No. 26-4, BANA's RJN, Ex. 2; Dkt. No. 27-2, Caliber's RJN, Ex. C.) Therefore, the basis of Plaintiffs' claim challenging the validity of the Substitution of Trustee is false and the Court GRANTS BANA's motion to dismiss the cancellation of instrument claim related to the Substitution of Trustee filed on February 12, 2014 WITH PREJUDICE. Since Plaintiffs' challenge to the validity of the Substitution of Trustee also fails as MTC, as the substituted Trustee, had the authority to record a Notice of Default and Notice of Trustee's Sale. (Dkt. No. 27-2, Caliber's RJN, Exs. B, D.) Thus, the Court also GRANTS Defendants' motions to dismiss the cancellation of instrument claim related to the Notice of Default and Notice of Trustees' Sale as to DOT 1 WITH PREJUDICE.

### b.    Assignment 2

Based on the Court's prior order on motion to dismiss, Defendants argue that Plaintiffs have failed to provide specific facts why Assignment 2 is void based on BANA's use of Caliber as an attorney in fact or that a power of attorney must be attached to the document. Plaintiffs do not address or provide legal authority to counter Defendants' argument.

As asserted in the FAC, the SAC again alleges that Assignment 2, an assignment

of DOT 1 from BANA to U.S. Bank as Trustee of LSF9, is void because the Assignment was executed by Caliber as BANA's attorney in fact and there is no relationship between Caliber and either BANA or U.S. Bank as Trustee of LSF9 and no evidence of Caliber's authority to complete this purported assignment. (Dkt. No. 25, SAC ¶ 47.)

As the Court previously explained, California Civil Code section 1095 requires that "[w]hen an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact." Cal. Civil Code § 1095. It appears that BANA complied with section 1095 where Caliber Home Loans is named as BANA's attorney in fact and Caliber subscribed BANA's name on Assignment 2. (See Dkt. No. 27-2, Caliber's RJN, Ex. E.)

Under California Civil Code section 1095, a debtor can challenge the signing of an instrument transferring an estate in real property by claiming that it was not executed properly. Fonteno v. Wells Fargo Bank, N.A., 228 Cal. App. 4th 1358, 1378 (2014) (challenging signature block). Here, Plaintiffs failed to cure the deficiencies the Court found in the FAC and failed to provide specific facts to explain why Assignment 2 is void based on BANA's use of Caliber as an attorney in fact. Thus, the Court GRANTS Defendants' motions to dismiss cancellation of instruments as it relates to the validity of Assignment 2 WITH PREJUDICE.

### c.  Assignment 3

Lastly, U.S. Bank summarily argues that Plaintiffs failed to plead any facts showing that Assignment 3 is void, that the allegations in the SAC are contradictory and that Plaintiffs improperly seek a  preemptive action to determine whether U.S. Bank can initiate nonjudicial foreclosure. Caliber also argues that Plaintiffs lack grounds to challenge the beneficiaries' authority to foreclosure under Yvanova because they do not allege a void assignment and do not allege a completed foreclosure sale. Plaintiffs respond that the attempted assignment of DOT 2 on July 24, 2014 is void

[16cv513-GPC(MDD)]

because it was removed from U.S. Bank in 2011 following a Chapter 11 bankruptcy filing in the Southern District of New York and pursuant to an Asset Purchase Agreement; therefore, the direct contradiction renders Assignment 3 void. Neither MERS nor U.S. Bank were the beneficiaries of DOT 2 and could not assign the beneficial interest under DOT 2.

As discussed above in the quiet title cause of action, the Court similarly concludes that the cancellation of instrument cause of action fails to state a claim for lack of standing. In addition, the Court notes that in <u>Saterbak</u>, the court of appeal concluded that the plaintiff failed to allege "serious injury" for a claim of cancellation of instrument. 245 Cal. App. 4th at 819. The plaintiff alleged that while she faces the prospect of losing her home since the entity that seeks to foreclose does not own her deed of trust, the court of appeal explained that even if the assignment was invalid, it could not "cause serious injury" because her obligation on the note remained unchanged. <u>Id.</u> at 819. Similarly, in this case, Plaintiffs allege that the "instruments" are being used to substantiate a non-judicial foreclosure and they will lose their home; however, such an allegation is not sufficient to allege a "serious injury" to them, <u>see id.</u>; furthermore, no initiation of non-judicial foreclosure on DOT 2 has been alleged.

As allegations as to the challenge to Assignment 3 are the same in this claim as in the quiet title claim, the Court GRANTS U.S. Bank's motion to dismiss this claim WITH PREJUDICE.

Finally, Defendants argue that this claim fails because Plaintiffs have failed to tender the outstanding amount due. Plaintiffs do not address the tender argument.

Alleging facts to show tender in the amount of the indebtedness or a valid excuse to the tender requirement is necessary to state a claim for cancellation of instruments. <u>Morgan v. Aurora Loan Servs., LLC</u>, 646 Fed. App'x 546 (9th Cir. 2016). "In an action for rescission or cancellation of instruments, a complainant is required to do equity 'by restoring to the defendant any value the plaintiff received from the transaction.'" <u>Kimball v. Flagstar Bank F.S.B.</u>, 881 F. Supp. 2d 1209, 1225 (S.D. Cal.

[16cv513-GPC(MDD)]

2012) (pre-foreclosure case). However, tender is not required for causes of action for cancellation of instruments if the plaintiff properly alleges that a foreclosure sale is void rather than voidable. <u>Sciarratta v. U.S. Bank Nat'l Ass'n</u>, 247 Cal. App. 4th 552, 568 (2016) (tender was not required to state a cause of action for quiet title and cancellation of instruments because the plaintiff properly alleged the foreclosure was void). Therefore, because Plaintiffs allege that Assignment 3 is void, tender is not required for a cancellation of instrument claim.

In sum, the Court GRANTS all Defendants' motions to dismiss the cancellation of instrument cause of action WITH PREJUDICE.

## F.    Declaratory Relief

Under 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Declaratory relief should be denied if it will "neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." <u>United States v. Wash.</u>, 759 F.2d 1353, 1356–57 (9th Cir. 1985). A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action. <u>Manown v. Cal-Western Reconveyance Corp.</u>, No. 09cv1101 JM (JMA), 2009 WL 2406335, at *6 (S.D. Cal. Aug. 4, 2009); <u>General of America Ins. Co. v. Lilly</u>, 258 Cal. App. 2d 462, 470 (1968) (declaratory relief should not be used to allow a litigant "with a second cause of action for the determination of identical issues"). "A declaratory judgment is not a theory of recovery . . .[it] "merely offers an additional remedy to litigants." <u>Flores v. EMC Mortg. Co.</u>, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014) (citations and quotation marks omitted)

The Ninth Circuit determined that "[d]eclaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty,

insecurity, and controversy giving rise to the proceeding." <u>Eureka Fed. Sav. & Loan Assoc. v. American Cas. Co.</u>, 873 F.2d 229, 231 (9th Cir.1989).  To determine whether a controversy invokes declaratory relief, the Court must determine whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Maryland Cas. Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941).  "A claim for declaratory relief is not a stand-alone claim, but rather depends upon whether or not Plaintiff states some other substantive basis for liability."  <u>Nguyen v. JP Morgan Chase Bank</u>, No. SACV 11-01908, 2012 WL 294936, at *4 (C.D. Cal. Feb. 1, 2012) (citing <u>Glue–Fold, Inc. v. Slautterback Corp.</u>, 82 Cal. App. 4th 1018, 1023 n.3 (2000) (noting that equitable forms of remedy "have no separate viability" if plaintiff's other causes of action fail)).

District courts have dismissed declaratory judgment causes of action as unnecessary when there are adequate forms of remedy at law available. <u>See</u> <u>Mangindin v. Washington Mut. Bank</u>, 637 F. Supp. 2d 700, 707-08 (N.D. Cal. 2009); <u>Jensen v. Quality Loan Serv. Corp.</u>, 702 F. Supp. 2d 1186, 1189 (E.D. Cal. 2010) (declaratory relief is duplicative of other claims - for example a resolution of quiet title claim will necessarily determine who owns the subject property.); <u>Simmons First Nat'l Bank v. Lehman</u>, No. 13cv2876-DMR, 2015 WL 1503437, at *7 (N.D. Cal. Apr. 1, 2015) (citing <u>Akhavein v. Argent Mortgage Co.</u>, No. 09–cv–00634 RMW (RS), 2009 WL 2157522, at *5 (N.D. Cal. July 18, 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action"); <u>Manown v. Cal-Western Reconveyance Corp.</u>, No. 09cv1101 JM(JMA), 2009 WL 2406335, at *6 (S.D. Cal. Aug. 4, 2009) (dismissing declaratory relief cause of action as redundant and unnecessary since remedies under the other causes of action will provide adequate relief).

In <u>Mangindin</u>, Plaintiffs sought declaratory relief that "Defendants do not have the right to foreclose on the Subject Property because Defendants' security interest in

the Subject Property has been rendered void by reason of . . . and "Defendants have no authority to sell the Subject Property because they failed to comply with the strict requirements of [Cal. Civ. Code § 2924, et seq.]." <u>Mangindin</u>, 637 F. Supp. 2d at 707-08. The court concluded that the declaratory relief seeks relief that is commensurate with relief sought in the other causes of action and dismissed the claim as duplicative and unnecessary. <u>Id.</u>

Plaintiffs seek similar relief as in <u>Mangindin</u> by seeking a declaration of rights and duties as to the validity of the DOT 1, DOT 2, Assignment 1, Assignment 2, Assignment 3, the Notice of Default, and Notice of Trustee's Sale, and asks the Court to issue an order that Defendants have no right or interest in the Property or to use the power of sale to foreclose on or transfer ownership of the Property. (Dkt. No. 25, SAC ¶¶ 187, 189, 190.) Thus, the Court concludes that the declaratory relief Plaintiffs seek is similar to the relief sought in the other causes of action.

Moreover, a "claim for declaratory relief is not a stand-alone claim, but rather depends upon whether or not Plaintiff states some other substantive basis for liability." <u>Nguyen v. JP Morgan Chase Bank</u>, No. SACV 11-1908 DOC (ANx), 2012 WL 294936, at *4 (C.D. Cal. Feb. 1, 2012). Here, because the Court grants Defendants' motions to dismiss on the quiet title and cancellation of instrument causes of action, the declaratory relief claim, which is based on the same factual and legal theories, must also be dismissed. Therefore, the Court GRANTS all Defendants' motion to dismiss the declaratory relief claim WITH PREJUDICE.

**G.   Seventh Cause of Action - Slander of Title as to all Defendants**

"The recordation of an instrument facially valid but without underlying merit will give rise to an action for slander of title." <u>Stamas v. Cnty. of Madera</u>, 795 F. Supp. 2d 1047, 1068 (E.D. Cal.2011) (citing <u>Seely v. Seymour</u>, 190 Cal. App. 3d 844, 857 (1987)). To state a claim for slander of title, Defendants must allege "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss." <u>Manhattan Loft, LLC v. Mercury Liquors, Inc.</u>,

173 Cal. App. 4th 1040, 1051 (2009) (citation omitted).  California Civil Code section 2924 also provides that the publication of notices, such as the Notice of Default and Notice of Trustee's sale, constitute privileged communications pursuant to California Civil Code section 47.  Cal. Civil Code §§ 2924(a)(1), (a)(3), (d).  An exemption to the privilege is predicated on an allegation of malice.  <u>Kachlon v. Markowitz</u>, 168 Cal. App. 4th 316, 333 (2008); <u>see</u> <u>Ogilvie v. Select Portfolio Serv.</u>, No. 12cv1654-DMR, 2012 WL 3010986, at *4 (N.D. Cal. July 23, 2012) (allegation that Defendants "acted in malice and disregard for the truth when they formulated false documents" is adequate to plead malice); <u>Permito v. Wells Fargo Bank, N.A.</u>, No. C-12-00545-YGR, 2012 WL 1380322, at *8 (N.D. Cal. Apr. 20, 2012) ("Absent factual allegations of malice, a trustee's performance of the statutory procedures in a nonjudicial foreclosure is subject to the qualified, common-interest privilege of California Civil Code § 47(c)(1).").  Malice requires "that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights."  <u>Kachlon</u>, 168 Cal. App. 4th at 336 (quoting <u>Sanborn v. Chronicle Pub. Co.</u>, 18 Cal.3d 406, 413 (1976)).

The SAC alleges that Defendants falsely acting as either the trustee or the agent of the beneficiary of the DOT or the agent of Defendants wrongfully and without privilege caused a notice of default and notice of trustee's sale to be recorded against the subject property.  (Dkt. No. 25, SAC ¶¶ 200-201.)  Defendants were never a trustee, beneficiary or assignee of any beneficiary of any DOT recorded against the subject property.  (<u>Id.</u> ¶ 202.)  The SAC further alleges that the recordation of documents was not privileged because BANA did not have the authority to execute or record the Substitution of Trustee prior to becoming the beneficiary of DOT 1 and Caliber did not have the power of attorney to act on behalf of BANA when Assignment 2 was recorded.  (<u>Id.</u> ¶ 197.)  Therefore, MTC did not have authority to execute or record the Notice of Default and two Notice of Trustee's Sale.  (<u>Id.</u>)  It is further alleged that

Assignment 3 is void because U.S. Bank was not the beneficiary of DOT 2 when the attempted assignment was executed and recorded. (Id.) Defendants, wrongfully and without privilege, published and recorded matters that they are the current owners of the subject property as evidenced by Assignments 2 and 3. (Id. ¶ 203.) The SAC alleges that as a result, Defendants have slandered Plaintiffs' title to the subject property. (Id. ¶ 204.) Such conduct was not privileged. (Id. ¶ 205.)

### 1.    BANA and U.S. Bank

Defendants argue that the mailing, publication and delivery of notices constitute privileged communications pursuant to California Civil Code section 47 unless Plaintiffs plead facts that Defendants acted with malice, which they have not done. Plaintiffs argue that because the Substitution of Trustee relating to DOT 1 was recorded four days prior to BANA becoming the beneficiary of DOT 1 through Assignment 1, the Substitution of Trustee substituting in MTC as Trustee and the subsequent recordation of Notice of Default and Notice of Trustee's Sale by MTC are void and therefore cannot constitute privileged communications and constitute slander of title.

As discussed above on the cancellation of instruments cause of action, the Court found that the basis for Plaintiffs' allegations that the Substitution of Trustee, Notice of Default and Notice of Trustee's Sale were invalid were based on an erroneous reading of the dates the relevant documents were recorded.   Therefore, Plaintiffs' slander of title fail to state a claim as to the Substitution of Trustee, the Notice of Default and Notice of Trustee's Sale.  Also, as discussed above on the cancellation of instruments claim, the Court dismissed Plaintiffs' allegation that Caliber did not have the power of attorney to act on behalf of BANA when Assignment 2 was recorded. Thus, the slander of title claim fails as to Assignment 2.  Moreover, even if the Notice of Default and Notice of Trustee's Sale were false, the recording of these  instruments are privileged under California Civil Code sections 2924(a)(1), (a)(3), (d) and Plaintiffs have not alleged malice to exempt those instruments from the privilege.

As to Assignment 3, as discussed above in the quiet title and cancellation of

[16cv513-GPC(MDD)]

instruments claims, Plaintiffs do not sufficiently allege standing to challenge an assignment before any judicial foreclosure proceedings have occurred.

Thus, the Court GRANTS Defendants' motion to dismiss the slander of title cause of action WITH PREJUDICE.

**2.      Caliber**

Plaintiffs allege that Caliber slandered their title to the subject property by recording Assignment 2 which is not protected by the privilege because Caliber was not acting with any authority to record Assignment 2 as an attorney in fact. (Dkt. No. 25, SAC ¶¶ 48, 49, 197.)

As found above in the cancellation of instrument claim, Plaintiffs have failed to allege that Caliber had no authority to record Assignment 2 as BANA's attorney in fact. Therefore, Plaintiffs have failed to state a claim against Caliber for slander of title as to Assignment 2. Accordingly, the Court GRANTS Caliber's motion to dismiss the slander of title claim WITH PREJUDICE.

**H.      Third Cause of Action - California Business & Professions Code section 17200**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." <u>Rubio v. Capital One Bank</u>, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted).

Plaintiffs' UCL claim is based on the following alleged acts:

a. Undertaking a negligent review of Plaintiffs' application for loan modification;
b. Failing to complete an evaluation of Plaintiffs for all loss mitigation options available to Plaintiffs and provide written notice if its decision on the application within 30 days of receiving the complete application, in violation of 12 C.F.R. § 1024.41(c) by BANA;
c. Violations of the alleged sections of Regulations X and Z respectively by failing to acknowledge and/or timely respond to said requests with accurate information;
d. Instituting improper foreclosure proceedings to generate unwarranted fees by BANA;
e. Improper recordation of Assignments 1, 2 and 3; as well as substitution of trustee without authority;

f. Concealing the true character, quality, and nature of their assessment of marked-up fees against Plaintiffs' account by BANA and Caliber;
g. Clouding Plaintiffs' title to the Subject Property by recording various instruments affecting title and interest to the Subject Property as alleged in paragraphs 42 through 49; and
h. Attempting to foreclose on the Subject Property without the legal authority to do so and keeping Plaintiffs' loan (DOT1) in an artificial state of default.

(Dkt. No. 25, SAC ¶ 150.)

BANA, U.S. Bank and Caliber argue that Plaintiffs lack standing to assert their UCL claim. As to BANA, Plaintiffs assert that BANA engaged in unlawful acts by violating Regulations X and Z and its acts were fraudulent when it executed a substitution of trustee which was recorded with the County of San Diego. (Dkt. No. 29 at 18.) As to Caliber, Plaintiffs contend that they have established standing by alleging that Caliber engaged in unlawful acts by violating sections of Regulations X and Z and engaged in fraudulent conduct when it executed Assignment 2 which was recorded with the County of San Diego. (Dkt. No. 30 at 9.)

Section 17204 requires that a plaintiff must demonstrate injury-in-fact and loss of money or property caused by the unfair competition. Cal. Bus. & Prof. Code § 17204. The purpose of this provision is "to confine standing to those actually injured by a defendant's business practices . . . . ." Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 321 (2011). "To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury-in-fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." Id. at 322.

On the injury-in-fact allegations, the SAC remains essentially the same.[17] (Dkt.

---

[17]Plaintiffs add a sentence to assert an additional injury-in-fact, "the ongoing delay with respect to the state of artificial default has caused the Principal balance due under the loan secured by DOT 1 to increase, reducing Plaintiffs' equity interest in the Subject Property." (Dkt. No. 25, SAC ¶ 160.) However, the Court has already held that loss of equity, as it is already alleged in paragraph 159, sufficiently alleges an injury-in-fact.

No. 25, SAC ¶¶ 159, 160.)  In the prior order, the Court concluded that Plaintiffs have alleged an injury-in-fact and loss of property or money by claiming that they have lost equity in the Property and have been subject to marked up charges and excess fees. (Dkt. No. 23 at 31)  (citing Sullivan v. Washington Mut. Bank, FA, No. C-09-2161 EMC, 2009 WL 3458300, at *4 (N.D. Cal. Oct. 23, 2009) (improper finance charges would constitute both injury in fact and loss of money); Sokoloski v. PNC Mortg., Civ. No. 14-1374 WBS CKS, 2014 WL 6473810, at *7 (E.D. Cal. Nov. 18, 2014) (loss of equity constitutes "lost money or property" under UCL) (citing Rufini v. CitiMortgage, Inc., 227 Cal. App. 4th 299, 310-311 (2014) (holding that plaintiff's allegation that the lender deprived plaintiff of the opportunity to pursue other means of avoiding foreclosure, leading to the loss of his home and the equity he had in it, was sufficient to constitute "lost money or property" under the UCL)).  The loss of money, such as marked up charges and excessive fees and loss of equity, is due to allegations that Defendants failed to provide adequate or complete responses to RFI and NOEs in violation of Regulation X.  (Dkt. No. 25, SAC ¶¶ 150, 155.)

But the Court held that Plaintiffs did not allege an injury-in-fact and loss of property or money based on the alleged imminent risk of foreclosure, and related injunctive relief they seek as there is no impending foreclosure. (Dkt. No. 23 at 31-32) (citing Sullivan, 2009 WL 3458300 at *4) (initiation of wrongful foreclosure sale and the encumbrance on the deed of trust allege injury-in-fact under the UCL); Jensen v. Quality Loan Serv. Corp., 702 F. Supp. 2d 1183, 1199 (E.D. Cal. 2010) (allegation that borrower "will" lose personal residence if a non-judicial foreclosure occurs does not allege facts that he has lost money or property).

BANA and U.S. Bank's citation to Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal. 4th 497, 522-23 (2013) is inapposite because the economic injury the borrower suffered was the impending foreclosure of her home and because all the alleged unlawful and unfair acts committed by Defendants occurred after her default, she could not assert the impending foreclosure of her home was caused by Defendants'

1  wrongful actions.  Id. at 523.  In this case, the alleged injury in fact and loss of money

2  are the marked up charges and excess fees and not an impending foreclosure.  As

3  previously stated, the Court concludes that Plaintiffs have standing to assert a cause of

4  action under the UCL.

5  The unlawful prong of the UCL incorporates "violations of other laws and treats

6  them as unlawful practices." Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.,

7  20 Cal. 4th 163, 180 (1999).  This prong creates an "independent action when a

8  business practice violates some other law." Walker v. Countrywide Home Loans, Inc.,

9  98 Cal. App. 4th 1158, 1169 (2002).  A UCL claim "stands or falls depending on the

10  fate of antecedent substantive causes of action." Krantz v. BT Visual Images, 89 Cal.

11  App. 4th 164, 178 (2001).

12  Defendants argue that Plaintiffs have only asserted a violation of 12 C.F.R. §

13  1024.41(c) and fail to provide any specific factual allegation; therefore they fail to

14  assert a predicate legal violation to support a UCL claim.  Plaintiffs respond that they

15  are alleging violations of relevant sections of Regulations X and Z[18].

16  Again, Plaintiffs include a violation of 12 C.F.R. § 1024.41(c) in its UCL claim

17  which relates to loss mitigation options.  As the Court previously stated, other than a

18  conclusory allegation regarding this alleged violation, Plaintiffs have failed to provide

19  specific factual allegations.  Thus, the Court reaffirms its conclusion that the SAC does

20  not assert the predicate legal violation of 12 C.F.R. § 1024.41(c) to support a UCL

21  claim.  However, Plaintiffs have amended and allege violations of Regulation X. (Dkt.

22  No. 25, SAC ¶ 150.)  As discussed above, certain allegations as to Regulation X stated

23  a claim.  Therefore, Plaintiffs have alleged a claim under the "unlawful" prong as to

24  Regulation X.  The Court DENIES all Defendants' motions to dismiss the unlawful

25  prong of the UCL claim based on the alleged violations of Regulation X.

26  To state a claim under the fraudulent prong of the UCL, "it is necessary only to

27

28

[18]As stated earlier, the Court dismisses the Regulation Z allegations.

show that members of the public are likely to be deceived" by the business practice. Prakashpalan v. Engstrom, Lipscomb and Lack, 223 Cal. App. 4th 1105, 1134 (2014). Where a plaintiff alleges fraud or a claim is grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Allegations of fraud under section 17200 must comply with Rule 9(b)  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) particularity requirement to UCL claim grounded in fraud).  A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  Odom v. Microsoft Corp., 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted).  "Where a claim under the unfair prong is based upon alleged fraudulent conduct, that claim likewise must satisfy the heightened pleading requirements of Rule 9(b)."  Kenery v. Wells Fargo, N.A., No. 13cv2411-BLF, 2015 WL 5138635, at *2 (N.D. Cal. Sept. 1, 2015) (citing Kearns, 567 F.3d at 1125; In re Apple In–App Purchase Litig., 855 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012)).

Defendants argue that the fraudulent conduct is asserted in generalities and not specifics.  While the names of the defendants have been added, they do not include the names of specific employees who made the alleged fraudulent statements.  Plaintiffs oppose arguing that BANA and U.S. Bank fraudulently caused the recording of Assignments 1 and 3 and the Substitution of Trustee and that Caliber fraudulently caused the recording of Assignment 2.

In the Court's ruling above, it concluded that Plaintiffs failed to state a claim for cancellation of instrument and slander of title regarding the recordation of Substitution of Trustee based on the incorrect reading of the recording dates of Assignment 1 and the Substitution of Trustee.  In addition, the Court concluded that Plaintiffs have failed to allege facts to support cancellation of instrument and slander of title that Assignment 2 is void.  For the same reasons, Plaintiffs cannot state a claim based on fraudulent conduct concerning these recorded documents and the Court GRANTS Defendants'

motion to dismiss the UCL claim on the fraudulent prong as to Assignment 1, Assignment 2, and the Substitution of Trustee WITH PREJUDICE.

As to Assignment 3, as discussed above, the Court held that Plaintiffs failed to state a claim as to quiet title, cancellation of instrument and slander of title for lack of standing because Plaintiffs do not allege any foreclosure proceedings have been initiated on DOT 2 which concerns Assignment 3.  While the SAC alleges that there is an "imminent threat and risk of foreclosure" constituting injury-in-fact under section 17200 as to DOT 1, (Dkt. No. 25, SAC ¶ 160), which the Court previously rejected because there was no pending foreclosure as to DOT 1, it provides no allegations of injury-in-fact or loss of money or property as to DOT 2.  Therefore, under the UCL, Plaintiffs have not alleged any facts to establish standing that the recordation of Assignment 3 was fraudulent.  Therefore, the Court GRANTS Defendant U.S. Bank's motion to dismiss the UCL claim on the fraudulent prong as to the recordation of Assignment 3 WITH PREJUDICE.

The SAC also alleges fraudulent conduct concerning unlawful fees assessed to their loan and concealing these marked up fees. (Dkt. No. 25, SAC ¶¶ 155, 158.)  As to the marked up fees, Plaintiffs fail to provide specific facts as to the who, what, when, and where concerning these allegedly unlawful fees resulting in fraudulent conduct.  See Odom, 486 F.3d at 553.  Accordingly, Plaintiffs have not satisfied the Rule 9(b) requirement and consequently, fail to assert a cause of action under the "fraudulent" prong of the UCL as the marked up fees, and the Court GRANTS Defendants' motion to dismiss.

As to the "unfair" prong, a business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999).

The SAC now alleges "BANA and CALIBER'S, respective acts and practices

relating to Regulation X and Z, as hereinabove alleged, constitute 'unlawful' and 'unfair' business acts under the UCL, in that said acts and practices offend public policy and are substantially injurious to Plaintiffs and all consumers.  Said acts and practices have no utility whatsoever, much less sufficient utility to outweigh the substantial harm to Plaintiffs, other consumers, and homeowners." (Dkt. No. 25, SAC ¶ 151.)  Plaintiffs have only added the specific Defendants and the word "unlawful"; otherwise the "unfair" allegation remains the same as in the FAC.

The Court previously concluded that the FAC failed to state "'with reasonable particularity the facts' to support the "unfair" prong of the UCL.  See Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (1993) (a "plaintiff alleging unfair business practices under [the UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation."  To the extent Plaintiffs' allegations for 'unfair' practices sound in fraud, Rule 9(b) must also be satisfied. See Kenery, 2015 WL 5138635, at *2."  Since the allegations on the unfair prong has not been materially altered, the Court GRANTS all Defendants' motions to dismiss the "unfair" prong of the UCL for failing to state a claim WITH PREJUDICE.

In sum, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss the UCL claim.

### Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Defendants' motions to dismiss.  Specifically, the Court GRANTS in part and DENIES in part Defendants' motions to dismiss the first cause of action for violations of Regulation X of RESPA and Regulation Z of TILA; and the third cause of action for violations of California Business & Professions Code section 17200 *et seq*.  The Court further

/ / / /

/ / / /

/ / / /

/ / / /

GRANTS Defendants' motions to dismiss WITH PREJUDICE as to the fourth cause of action for quiet title; the fifth cause of action for cancellation of instruments; the sixth cause of action for declaratory relief; and seventh cause of action for slander of title.

IT IS SO ORDERED.


DATED:  November 7, 2016

HON. GONZALO P. CURIEL
United States District Judge